**Dorothea McKENNEY, Plaintiff,**

v.

**NEW YORK CITY OFF–TRACK BETTING CORPORATION, et ano., Defendants.**

**No. 93 Civ. 5191 (LAK).**

United States District Court, S.D. New York.

Nov. 9, 1995.

John F. Olsen, Olsen & Brown, for Plaintiff.

Frances Sands, Assistant Corporation Counsel and Paul A. Crotty, Corporation Counsel of the City of New York, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff Dorothea McKenney, an employee of the New York City Off–Track Betting Corporation ("OTB") sues OTB and Raymond Gibson, a former director of OTB's budget department, for sexual harassment, gender discrimination, and retaliation. Defendants move for summary judgment dismissing the complaint. They argue that much of the evidence relied upon by plaintiff relates to events that occurred more than 300 days prior to the filing of plaintiff's EEOC charges and therefore should not be considered because claims relating to those events are time-barred. When those incidents are stripped away, defendants assert, plaintiff has insufficient evidence to warrant a trial on her timely claims.

### Facts

The factual record in this case is substantial. For the most part, the details are unnecessary to the resolution of this motion.

Plaintiff claims that Gibson treated her and other women in the Budget Department in a demeaning and insulting way from the time she began working there in July 1988 through her transfer to another unit in April 1992, save for a thirteen month period during which she was on medical leave. The alleged mistreatment of female employees is said to have worsened after the appointment in 1990 of Hazel Dukes as president of OTB, as Gibson allegedly was emboldened in his abuse by protection flowing from his long-standing personal relationship with Dukes. Indeed, on October 8, 1991 when, in an attempt to address ongoing personnel problems in the Budget Department, a meeting was held at which employees in the Department were asked to indicate whether they were interested in transferring to another department at OTB, over half of the Department staff, apparently including every female employee, requested a transfer. (Sands Decl. Ex. 1) Instead of being transferred, however, the employees were summoned to Dukes' office where, plaintiff claims, they were told that there would be no transfers and that their only alternative to remaining in their then present positions was resignation. (McKenney Dep. 116)

On January 6, 1992, McKenney was involved in a verbal exchange with her immediate superior, Michael Bogart, which took place in Gibson's presence and led to an ill-tempered round of memoranda between her and Bogart. (Sands Decl.Exs. 2–5) Gibson weighed in with a January 9, 1992 memorandum to McKenney in which he generally took Bogart's part and urged McKenney to focus on her work rather than "superfluous memorandums." (*Id.* Ex. 6) This provoked a written response from McKenney (*id.* Ex. 7), which in turn led to a formal complaint by Gibson of insubordination by McKenney (*id.* Ex. 8). Gibson's insubordination complaint against plaintiff resulted in a February 11 "informal conference" at which Barbara Jacquet, OTB's senior director of operations control, acted as the "conference leader." (*See id.* Ex. 9) According to plaintiff, Jacquet stated at the conference that she was well aware of Gibson's behavior toward female employees. Plaintiff then quotes Jacquet as saying, "we all know who is in the front office, we know nothing is going to happen to Mr. Gibson." (McKenney Dep. 141) On February 19, 1992, Jacquet issued a formal reprimand to McKenney regarding her attitude toward her co-workers. Jacquet suggested that McKenney "try to forgive and forget and help make [her] working hours as pleasant as possible for all concerned." (*Id.* Ex.

14; *see also* Ex. 9)[1]

The dust did not settle before McKenney, on March 3, 1992, filed a complaint with the New York State Division of Human Rights and the EEOC. The complaint charged as follows:

"On January 7, 1992 [*sic* ],[2] I was called into a meeting with Raymond Gibson, Director of Budget. At this meeting, I was degraded, ridiculed and referred to as 'honey' and a 'smart ass'. I am constantly reminded that I don't know my job or my 'place'. Both R. Gibson and my immediate supervisor Michael Bogart have made it known to me that if I don't like this type of treatment my only option is to resign.

"On information and belief male employees are not treated in this manner." (*Id.* Ex. 15, ¶¶ 3–4)

In April 1992, plaintiff was transferred to OTB's Revenue Department, where she has worked to date. Her job title and salary have remained the same, and her duties have been similar to those in her old position. She contends, however, that the new position is a demotion.

The EEOC issued a right to sue letter on August 25, 1993, and this action followed shortly thereafter. As framed by the pretrial order, plaintiff's contentions are that she was subjected to hostile work environment sexual harassment by Gibson during the period June 15, 1988 through April 1992, that she was subjected to disparate treatment on the basis of her gender, and that the insubordination charge against her and her transfer to the Revenue Department both constituted retaliation for her complaint against Gibson. (Pretrial order at 1–5) The focus of the hostile work environment claim is alleged "sexually derogatory name-calling ..., sexual slurs, and sex intimidation." (*Id.* §§ I at 1, III.A. ¶ 2)

## Discussion
### The Timeliness of Plaintiff's Claims

Defendants' principal argument is that much of the conduct complained of took place more than 300 days prior to the filing of plaintiff's EEOC charge and, to that extent, is time-barred. Plaintiff rejoins that the actions complained of constituted a continuing violation of plaintiff's civil rights, that at least one incident took place within the 300 day period, and in consequence that all of her claims are timely. In considering these contentions, it is useful to distinguish between the claim of sexual harassment by what plaintiff characterizes as "sexually derogatory name-calling.... sexual slurs, and sex intimidation" and the claim of disparate treatment, which relates to matters such as the times for coffee breaks, rules for telephone usage and the like (Pretrial order § III.A. ¶ 5).

Plaintiff testified at her deposition that the alleged verbal abuse of which she complains went on for years, the January 6, 1992 incident being only one of a long series of similar occurrences. (McKenney Dep. 89, 93, 96–100, 107, 125) Defendants nevertheless argue that the continuing violation doctrine does not apply to conduct of this character. They argue, in reliance on *Butts v. City of New York Dept. Of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993), and *Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), that the doctrine applies only to specific discriminatory policies or mechanisms and not to "multiple incidents of discrimination." (Def. Reply Br. at 3–4)

As this Court recently has noted in another case, the continuing violations doctrine is among the more confusing and inconsistent areas of discrimination law. *Johnson v. Nyack Hospital,* 891 F.Supp. 155, 162 (S.D.N.Y.1995). Among the points of uncertainty is precisely the issue defendants raise: whether the doctrine applies absent a formal discriminatory mechanism. In *Johnson,* however, this Court—after considering not only *Lambert,* but the Second Circuit's more

---

**1.** McKenney and Bogart continued their fusillade of accusatory memoranda during the interval between Gibson's intervention and Jacquet's reprimand. (*Id.* 10–13)

**2.** This date appears to be an error in the Division of Human Rights complaint. Judging from the various memoranda (Sands Decl.Exs. 2–6), the date of the confrontation seems to have been January 6, 1992.

recent decision in *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994)—concluded "that related acts *may* come within the continuing violation doctrine even absent a formal discriminatory structural mechanism." *Johnson,* 891 F.Supp. at 163 (emphasis added). Without recapitulating the analysis set forth in that opinion, the Court there held that the continuing violations doctrine applies: "[i]f the discriminatory acts within and without the limitation period are sufficiently similar and frequent to justify a conclusion that both are part of *a single discriminatory practice chargeable to the employer"* and the circumstances are such that the plaintiff was not bound to have sued earlier. *Id.* at 165 (emphasis added).

■ Here it is quite clear that plaintiff's evidence, if credited by the trier of fact, would suffice to establish a persistent pattern of frequent, sexually based verbal abuse of the plaintiff by Gibson. There is evidence from which the trier could find that this abuse was not confined to plaintiff and that it was open and notorious at OTB. Indeed, there is evidence that Gibson's mistreatment of women was brought to Ms. Dukes' attention and that she fired the official who complained rather than act against Gibson. (Katz Decl., May 10, 1995, ¶¶ 12–22) Thus, there is ample basis for finding that Gibson's behavior is fairly chargeable to the employer. Unlike *Johnson,* there is nothing in the circumstances of this case that warrants the conclusion, as a matter of law, that plaintiff was obliged to seek legal redress earlier, particularly in view of her absence on medical leave for over a year. While the trier would be entitled to reject plaintiff's account, that is what trials are for. There are genuine issues of fact material to determination of defendants' statute of limitations argument with respect to the verbal abuse aspect of plaintiff's claim.

The complaints of disparate treatment, whether viewed as part of the hostile environment claim or independently, suggest a similar pattern. Plaintiff's affidavit and deposition testimony, if credited, establishes a continuing pattern of gender-animated harassment commencing in 1988 and continuing until 1992. In consequence, the statute of limitations branch of defendants' motion is rejected in its entirety.

*The Sufficiency of Plaintiff's Claims*

Defendants next contend that plaintiff has failed to make out a *prima facie* case on any of her theories.

■ The assertion that plaintiff's evidence, if credited, would be insufficient to go to a jury on the sexual harassment and disparate treatment claims, especially in light of the Court's ruling on the statute of limitations issue, is devoid of merit. The evidence of sexual harassment manifestly raises a genuine issue of fact under the controlling standard. *Harris v. Forklift Systems, Inc.,* —— U.S. ——, —— – ——, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1994). As far as disparate treatment is concerned, defendants do not contest that plaintiff is a member of a protected class and that she satisfactorily performed the duties of her position. Their contention that plaintiff has offered no evidence of gender-related differences in treatment is irreconcilable with the material submitted on plaintiff's behalf.

The retaliation claim is another matter. Plaintiff's contention that Gibson's insubordination complaint constituted retaliation for her complaint against Gibson is inconsistent with the record. The insubordination complaint was made on January 9, 1992, whereas plaintiff did not file her complaint based on Gibson's behavior until March 3, 1992. Thus, all that remains of plaintiff's charge is plaintiff's contention that her transfer to the Revenue Department, which did post-date her EEOC complaint, was retaliatory.[3]

■ In order to establish a *prima facie* case of retaliation, the plaintiff "must show participation in protected activity, an employ-

---

3. Plaintiff's deposition refers to complaints she allegedly made about Gibson beginning in October 1988. (McKenney Dep. 80–84) None, however, is documented in any way. There is no suggestion or evidence that the 1992 insubordination charge was related to these alleged complaints years earlier. (*Cf.* Pretrial order § I at 2) Indeed, plaintiff's deposition clearly indicates that Gibson's insubordination charge against her stemmed directly from the January 6, 1992 incident. (McKenney Dep. 138)

ment action disadvantaging [her for engaging] in the protected activity, and a causal connection between the proposed activity and the adverse employment action." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991). If the plaintiff establishes a *prima facie* case, the burden of going forward with evidence of a "legitimate, nondiscriminatory reason" for the action shifts to the defendant. If the defendant produces such evidence, the burden shifts to the plaintiff to establish that the reason proffered is pretextual and that an improper motive animated the action complained of, *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995).

■ Plaintiff contends that her transfer to Revenue was a demotion. She testified that her responsibilities in the new job are less, there is no overtime, and it is more difficult to be promoted from the new position. (McKenney Dep. 149–52) Her testimony on this subject, however, consists entirely of unsubstantiated, conclusory assertions. Indeed, to the extent she offered any specifics at all, they established that the duties of the two positions are quite comparable. (*Id.* 71–72, 150–51) The salary and job title concededly are the same. Her papers in opposition to this motion do not even try to support the characterization of the transfer as a demotion, dealing with the entire issue in a single conclusory phrase. (Pl.Br. 24)

■ There is no Title VII violation absent a materially adverse change in the terms and conditions of employment. *Crady v. Liberty National Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993); *Medwid v. Baker,* 752 F.Supp. 125, 136 (S.D.N.Y.1990). Here there is no genuine issue of material fact concerning the transfer. Even if the motive for the transfer was retaliatory, there was no material adverse change. Accordingly, the retaliation claim is dismissed.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted with respect to plaintiff's retaliation claim and denied in all other respects.

This case is marked ready for trial, effective December 4, 1995, on twenty-four hours notice. Any motions *in limine* and, if either party has demanded a jury trial, requests to charge and proposed *voir dire* questions, shall be served and filed (with two additional courtesy copies sent to chambers via the 8th floor mailroom) no later than December 1, 1995.

SO ORDERED.