Diana RIVERA, et ano., Plaintiffs,

v.

**PUERTO RICAN HOME ATTENDANTS SERVICES, INC., et al., Defendants.**

No. 95 Civ. 8453 (LAK).

United States District Court,
S.D. New York.

June 24, 1996.

Eleanor Jackson Piel, New York City, for Plaintiffs.

Daniel Cobrinik, Underweiser & Underweiser, for Defendants Puerto Rican Home Attendants Services, Inc., Nunez, and Hernandez.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Defendants Puerto Rican Home Attendants Services, Inc. ("PRHAS"), Michael Nunez, and Juan Hernandez have moved to dismiss portions of plaintiffs' First Amended Complaint. They argue that: (1) certain alleged incidents relied upon as part of plaintiffs' sexual harassment and retaliation claims are time barred and/or fail to satisfy the exhaustion requirements of 42 U.S.C. § 2000e–5(e) and (f), and (2) the assault and battery counts are time barred and fail to state a claim upon which relief can be granted.[1]

### Facts

Between April and May of 1995,[2] plaintiffs Diana Rivera and Iris Fernandez separately filed charges with the EEOC alleging sexual harassment and retaliation by Michael Nunez, the executive director and program director of PRHAS, and Juan Hernandez, the assistant director of operations. After obtaining right to sue letters, the plaintiffs jointly filed a complaint in this Court on October 4, 1995, reiterating and expanding upon the allegations in the plaintiffs' EEOC charges. The allegations span a period be-

---

1. Defendants' motion seeks to dismiss also three claims that were in the original complaint but that plaintiffs did not even include in the amended pleading: claims under 42 U.S.C. § 1983 and the due process clause of the New York State constitution, as well as a claim for punitive damages under N.Y.EXEC.L. § 296. As plaintiffs no longer make these claims, they need not be addressed. The moving defendants' motion to sever the claims by each plaintiff was denied in open court.

2. It appears that plaintiff Iris Fernandez filed her EEOC charge on May 12, 1995, but the record has been inconsistent about the filing date of plaintiff Diana Rivera's EEOC charge, indicating that it was either on April 12 or May 10 of 1995. *See Rivera v. Puerto Rican Home Attendants Services, Inc.,* 922 F.Supp. 943, 945 n. 1 (S.D.N.Y. 1996).

ginning in 1987, when each plaintiff first was employed by PRHAS, and extend approximately to the time of the district court complaint. (AmCpt ¶¶ 11–12, 14, 24)

Defendants' exhaustion argument turns on whether certain allegations in the complaint exceeded the scope of the EEOC charges. It therefore is important to examine the plaintiffs' EEOC charges in some detail.

*Ms. Rivera's EEOC Charge*

In an affidavit filed with her EEOC charge, Ms. Rivera alleged the following:

Ms. Rivera commenced work at PRHAS as a clerk working under Mr. Hernandez' supervision for approximately a year. She then became Mr. Hernandez' secretary, a position she held from approximately October 1988 until October 1994, when she was promoted to her present position as personnel specialist. As a personnel specialist, her unit supervisor has been Mr. Hernandez, along with Frances Foye, both of whom report to Mr. Nunez, the executive director of the agency. (Pl Mem. Ex A ("Rivera Charge") ¶¶ 1–3) [3]

During all the time Ms. Rivera was a secretary to Mr. Hernandez, he made inappropriate sexual comments to her, which she "tried to ignore" in the hope that he would stop. (*Id.* ¶ 2) After she became a personnel specialist, he "kept a constant vigilance" of her activities and was always "looking at" and "watching" her, a practice that "continues to the present time." (*Id.*)

Matters escalated on March 13, 1995, when Mr. Hernandez, during a conference that he had invited Ms. Rivera to attend, propositioned her to sleep in his room. She refused. (*Id.*) This action caused her such upset that she felt ill and informed Mr. Hernandez that she probably would not be at the office the next day. Three days later, Mr. Hernandez wrote her a memorandum disallowing her sick day, docking her pay, and declaring that she showed a lack of responsibility and dedication toward her job and fellow workers.

He sent a copy of the memorandum to the executive director, Mr. Nunez. Ms. Rivera described these actions as "all in retaliation" for her refusal of his proposition. (*Id.*).

On March 20, 1995, Ms. Rivera wrote a complaint about Mr. Hernandez, describing his proposition and other treatment, and sent copies to Mr. Nunez and others. (*Id.*) Thereafter, Ms. Foye, with the approval of Mr. Hernandez, wrote Ms. Rivera a memorandum chastising her for taking extra time at lunch and informed her that her that she would be "docked in pay for this." (*Id.*)

Ms. Rivera alleged further that "[t]his kind of harassment has continued in all respects to the present time" (*id.*) and that she has been the object of "retaliation from all management" because of her complaint. (*Id.* ¶ 5) Hardly anyone in the office speaks to her, she said, because she has been isolated. (*Id.* ¶ 2) She stated that "[a]t the present time, there is no amelioration of the situation," and that the circumstances had become intolerable. She began suffering specific physical effects such as weight and hair loss. She felt she had "nowhere to turn," because she needed the employment to support her young son. (*Id.*)

*Ms. Fernandez' EEOC Charge*

In an affidavit attached to her EEOC charge, Ms. Fernandez described improper advances or comments allegedly made by Messrs. Nunez and Hernandez. She alleged that both retaliated against her and claimed that she was conspiring with Ms. Rivera in making complaints against them. (Nunez Aff.Ex. B) More specifically, her allegations included the following:

As the assistant director of administration, a position Ms. Hernandez has held for more than five years, her immediate supervisor is Mr. Nunez. (*Id.* ¶ 1) Previously, she worked as an acting assistant director for two years and has worked at PRHAS for a total of nine years.

---

**3.** Defendants referred solely to an unsworn statement as that which Ms. Rivera allegedly filed in connection with her EEOC charge (*see* Nunez Aff.Ex. B), while plaintiffs referred instead to an affidavit by Ms. Rivera dated May 10, 1995 and submitted as Exhibit A to plaintiffs' memorandum of law (pl mem 5 n. 1 & ex. A). For purposes of this motion, the Court accepts plaintiffs' version of the evidence regarding the allegations made by Ms. Rivera in connection with her EEOC charge, as the Court is obliged to view the evidence in the light most favorable to the plaintiffs.

Messrs. Hernandez and Nunez allegedly made improper sexual comments to her "on numerous occasions" during the nine years that she worked at PRHAS. (*Id.* ¶ 2) Ms. Fernandez "tried ignore" the "improper suggestions and innuendo" because she was "afraid of losing [her] job." (*Id.*)

On approximately November 10, 1994, Mr. Nunez "leered" at her and "made clear" an "intention to secure sexual favors" from her. After she rejected his overtures, she was "treated completely differently." From that time on, she no longer was included in meetings and activities that she ought to have attended in her capacity as assistant director. (*Id.*)

On March 22, 1995, Mr. Nunez called her into his office and accused her of coaching Ms. Rivera in her internal complaint against Mr. Hernandez and the agency. Mr. Nunez threatened to fire her and subsequently made further, similar threats, thereafter treating her with "scorn" and frequently screaming at her. (*Id.*)

Ms. Fernandez' EEOC charge concluded by emphasizing that she believed that she was being retaliated against for refusing her supervisor's advances. She indicated that the situation had become intolerable: "At the present time, there is no amelioration of the situation, [and] I am in an almost impossible situation with my job." Mr. Nunez has so undermined her authority, she claimed, that she lacked respect from staff, which has made her "anxious and stressed out." (*Id.* ¶ 5)

*Discussion*

*Exhaustion Under Title VII*

The exhaustion requirement of Title VII, which stems from 42 U.S.C. § 2000e–5(e) and (f), requires that a complainant file a timely complaint with the EEOC and receive a right to sue letter before bringing an action in federal court. *E.g., Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994).

■ Defendants contend that plaintiffs did not meet the exhaustion requirement because certain particulars set forth in the amended complaint were not presented in the EEOC charges. Specifically, they argue that Ms.

Rivera's EEOC charge did not state that (1) Mr. Nunez encouraged others to avoid her as an act of retaliation, (2) Mr. Hernandez engaged in physical contact, such as lifting her blouse and touching her crotch, and (3) Mr. Hernandez committed other acts such as showing her pictures of naked women and waving her underpants, which he had found in the women's restroom, around the office. (PRHAS Mem. ¶¶ 1, 3) Similarly, they contend that Ms. Fernandez' EEOC charge did not allege that Mr. Hernandez made particular sexual remarks to her in 1993 (*id.* ¶ 6) and note that she never presented to the EEOC the claim that her discharge in September 29, 1995 was retaliatory. (PRHAS Mem. ¶ 4; AmCpt ¶ 37) However, defendants ignore entirely the well-established principle that courts may entertain Title VII claims based on conduct "reasonably related" to the allegations contained in an EEOC charge, including conduct that occurs after the charge was filed. *Cornwell,* 23 F.3d at 706; *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993); *Stewart v. United States I.N.S.,* 762 F.2d 193, 198 (2d Cir.1985).

■ All of the specific allegations of the amended complaint are related reasonably to the picture of sexual harassment and retaliation described by the plaintiffs in their EEOC charges. Reasonably related claims fall typically into three categories: (1) acts of retaliation for the filing of an EEOC complaint, (2) acts loosely pleaded but within the scope of an EEOC investigation in response to the charge, and (3) allegations of further incidents of discrimination carried out in the same manner as those alleged in the EEOC charge. *Butts,* 990 F.2d at 1402–03; *Owens v. New York City Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.1991), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

■ The allegation that Mr. Nunez encouraged others to avoid Ms. Rivera as an act of retaliation may have occurred after the EEOC charge was filed, a point suggested by the chronology of the complaint but nevertheless ambiguous. (Am Cpt ¶¶ 21–22) If Mr. Nunez allegedly retaliated in this man-

ner as a result of Ms. Rivera's filing of an EEOC charge, it clearly would qualify as reasonably related. *See Butts*, 990 F.2d at 1402; *Owens*, 934 F.2d at 410–11 If the alleged retaliation by Mr. Nunez occurred before Ms. Rivera's EEOC filing, the allegation must be considered in light of her assertions in the EEOC charge that: (1) she had notified the executive director, Mr. Nunez, in writing about her complaints, (2) she faced retaliation from "all management," and (3) no one in the office spoke to her because she had been isolated. In this context, the allegation in question—that Mr. Nunez retaliated by encouraging others to avoid her—may be viewed as reasonably related in that it was loosely pleaded in the EEOC charge, but within the scope of an EEOC investigative response.

■ The alleged instances of touching by Mr. Hernandez of Ms. Rivera's blouse and crotch were said to be in connection with comments about her appearance or jokes (am cpt ¶ 14(h)) and thus were addressed more clearly in the EEOC charge than defendants would suggest. Those allegations of touching, along with other acts such as showing Mr. Rivera naked pictures, are, if not in the same family as the sexual comments and innuendo asserted in the EEOC charge, next of kin, and thus reasonably related. It simply would be unreasonable to expect a complainant, often unaided by counsel in filling out an EEOC charge, to enumerate every instance of comment or innuendo. It should be sufficient if a complainant describes concretely the type of inappropriate behavior complained of (e.g., sexual comments, sexual

advances, unjustified reprimands motivated by retaliation), without specifying each instance of an alleged series, and the responsible actor or actors.[4] For the same reasons, the specific sexual remarks allegedly made by Mr. Hernandez to Ms. Fernandez should not be dismissed on defendants' theory that the plaintiff did not enumerate each of them in her EEOC charge.

■ The claim that Ms. Fernandez has not complied with the exhaustion requirement regarding the alleged retaliatory discharge after she filed her EEOC charge is frivolous in light of the well established case law to the contrary. *Butts*, 990 F.2d at 1402; *Owens*, 934 F.2d at 410–11.

*Timeliness Under Title VII*

Defendants allege that certain other allegations are time barred under 42 U.S.C. § 2000e–5(e) because they allegedly occurred more than 180 days prior to the filing of the EEOC charge. Defendants seek dismissal on this ground to the extent plaintiffs' claims rest on (1) sexual remarks and innuendo allegedly made by Mr. Hernandez to Ms. Rivera before October 1, 1994, while she was his secretary, and (2) the sexual remarks allegedly made by Mr. Hernandez to Ms. Fernandez in 1993. (PRHAS Mem. ¶¶ 2, 5) Plaintiffs contend that the limitation period under 42 U.S.C. § 2000e–5(e) is 300, not 180 days and, in any event, that the allegations are timely under the continuing violation doctrine. In this case, regardless of whether the time period for filing an EEOC charge is 180 or 300 days,[5] it is necessary to resolve

---

**4.** By requiring the plaintiff to identify the actor or actors responsible for the type of conduct complained of, the problem of vagueness, which would prevent EEOC investigation and limit the notice to a party, is avoided. *Cf. Butts*, 990 F.2d at 1403.

**5.** The Supreme Court has not squarely addressed the issue of whether the relevant time period in a case like this is 180 or 300 days, and the issue is more complex than the statute setting forth the limitations period would make it appear. Section 42 U.S.C. § 2000e–5(e) states that a plaintiff must file an EEOC charge within 180 days after the alleged unlawful practice unless the plaintiff first filed an administrative complaint with a state or local agency authorized to grant relief, in which event the period is 300 days. States such

as New York that have an agency authorized to grant relief are called deferral jurisdictions. The Second Circuit frequently has treated the period as 300, rather than 180, days for claims arising in New York without regard to whether the plaintiffs first sought redress from the state agency simply because New York is a deferral jurisdiction. *See, e.g., Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Butts v. City of New York Dept. of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir.1993); *Baba v. Warren Management Consultants, Inc.*, 882 F.Supp. 339, 342 (S.D.N.Y.1995), *aff'd*, 89 F.3d 826 (2d Cir.1995), *cert. filed* (Apr. 22, 1996); *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995). *But cf. Van Zant v. KLM*

the applicability of the continuing violation doctrine in order to decide the viability of these allegations under the Title VII.

### Standard for Determining Continuing Violation

The continuing violation doctrine continues to be a confusing and inconsistently applied doctrine. *Johnson v. Nyack Hospital,* 891 F.Supp. 155, 162 (S.D.N.Y.1995), *aff'd without consideration of the point,* 86 F.3d 8 (2d Cir.1996). In *Johnson,* this Court, after considering the Second Circuit's decisions in *Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), and *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), concluded, in sum, that the continuing violation doctrine applies "[i]f the discriminatory acts within and without the limitation period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory practice chargeable to the employer" and that a "reasonable person in plaintiff's position would not have sued earlier." 891 F.Supp. at 165. This standard takes into account competing concerns of the employer and the plaintiff. On the one hand, the employer needs to be protected against stale claims. *Id.* at 164–66. On the other hand, the plaintiff reasonably may regard the commencement of litigation as unduly costly during the continued existence of a close and important employment relationship or reasonably may regard the alleged pattern of harassment as ambiguous or difficult to prove at the early stage. *Id.*

### Ms. Rivera's Claims

▇ Ms. Rivera's allegations, if credited by a trier of fact, would establish a series of related incidents of sexual harassment and retaliation on the part of Mr. Hernandez that

occurred with frequency and increasing severity over time. The Court rejects defendants' suggestion that the alleged sexual comments and innuendo occurring during the time Ms. Rivera worked as secretary to Mr. Hernandez must be viewed, as a matter of law, as an alleged "pattern of frequent sexual based verbal abuse" separate and distinct from the alleged proposition during March 1995 and alleged retaliation against her for her response. (PRHAS Mem. 4) Plaintiff has alleged a continuous pattern of harassment and retaliation by Mr. Hernandez that began with sexual comments and innuendo while she was his secretary, diminished into an uncomfortable vigilance during the first five or six months after she changed positions, and culminated with a sexual proposition and subsequent retaliation for her unequivocal response. A trier of fact could well conclude that the alleged forms of harassment by Mr. Hernandez were related and that the alleged retaliation was related to the complaint about the alleged harassment.

The next question is whether Ms. Rivera's allegation of a pattern of harassment and retaliation by Mr. Hernandez may be characterized fairly as chargeable to the employer. In this regard, the Court finds it significant that Mr. Hernandez held a supervisory position over Ms. Rivera at all relevant times. The supervisory position appears to have been one at a high level, given that Mr. Hernandez reported directly to the person highest in the PRHAS managerial hierarchy, Mr. Nunez. As the Second Circuit has noted, " '[a]t some point . . . the actions of a supervisor at a sufficiently high level in the hierarchy would necessarily be imputed to the company.' " *Karibian v. Columbia University,* 14 F.3d 773, 779 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129

---

*Royal Dutch Airlines,* 80 F.3d 708, 712 n. 1 (2d Cir.1996) (dicta in footnote that 180 days may be an appropriate time period where the record is silent as to whether the plaintiff filed first with the state agency and the parties contest the appropriate time period). The EEOC appears to have taken the position that the 300 day time limitations period should apply to all claims arising in deferral jurisdictions, even if the plaintiff files first with the EEOC, rather than the state or local agency. *See* 29 C.F.R. § 1601.13; *see also* 53 Fed.Reg. 10224 (1987).

In this case, plaintiffs have stated parallel claims under the New York Human Rights Law, which has a three-year statute of limitations and defendants have not sought to dismiss. *See* note 7 *infra.* Unless and until it becomes necessary to distinguish between the plaintiffs' Title VII and state Human Rights Law claims, there is no need to determine whether the Title VII time limitations period is 180 or 300 days in this case.

L.Ed.2d 824 (1994) (citing *Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992)); *see also Van Zant,* 80 F.3d at 715. Accordingly, the Court cannot at this stage exclude the possibility that a trier of fact could find that the alleged pattern of harassment and retaliation by Mr. Hernandez was chargeable to PRHAS.

An alternative and independently sufficient reason that the alleged harassment by Mr. Hernandez of Ms. Rivera may be chargeable to PRHAS is the indication in plaintiffs' allegations that the conduct was "open and notorious." *See McKenney v. New York City Off–Track Betting Corp.,* 903 F.Supp. 619, 621 (S.D.N.Y.1995) ("open and notorious" sexually based verbal abuse may be chargeable to employer). Ms. Fernandez stated in her EEOC charge that she had observed Mr. Hernandez sexually harass Ms. Rivera (Fernandez EEOC Charge ¶ 5), and the complaint asserts that "everyone in the office observed it from time to time." (Am Cpt ¶ 33) In such circumstances, the employer may be blind to the reality of the workplace only at its peril.

The third question is whether it was reasonable for Ms. Rivera not to have asserted her claims regarding the alleged sexual comments and innuendo earlier. What defendant characterizes as an "end" to one phase of the harassment when Ms. Rivera switched positions from secretary to personnel assistant goes to this question. According to Ms. Rivera's EEOC charge and the complaint, Mr. Hernandez held a supervisory position over Ms. Rivera when she began as a clerk, during the approximately six years she worked as his secretary, and as her unit supervisor when she became a personnel specialist. (Rivera Charge ¶¶ 1–3) Ms. Rivera thus remained continuously in a close and important employment relationship with her alleged harasser. In her own words in the EEOC charge, she tried to ignore the sexual comments allegedly made by Mr. Hernandez when she was his secretary in the "hope[ ] that he would stop." Looking back now, she believes that she had "been the special target of [Mr. Hernandez'] interest over a long period culminating in the . . . incidents in March, 1995." After she wrote an internal complaint, the ensuing retaliation made her employment circumstances intolerable. She decided to file an EEOC charge because she felt there was "nowhere to turn" and she "need[s] employment and [is] the sole support of a young son and [her]self." (*Id.* ¶ 5) Assuming the truth of her allegations for the purpose of this motion, it may not be said as a matter of law that Ms. Rivera acted unreasonably in choosing to ignore the harassment during the time she was secretary to Mr. Hernandez, valuing continued employment over the risks associated with asserting a claim, hoping the situation would improve, and finally asserting her claim when instead circumstances took a serious turn for the worse and became unbearable. *See Johnson,* 891 F.Supp. at 163–64; *cf.* Ramona L. Paetzold & Anne M. O'Leary–Kelly, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?* 31 AM.BUS.L.J. 365, 393 (1993) (*"When is Enough, Enough?"*) (in a continuing employment relationship, there will be incentives for a women to try to get along and to view offensive behavior in the most positive light). Moreover, in the event that Ms. Rivera had asserted her claim earlier, she would have born the risk that the alleged sexual comments and innuendo would not have been viewed by a trier of fact to be severe or pervasive enough to have altered the terms and conditions of her employment, an essential element of a hostile work environment claim. A plaintiff is not in other contexts, nor under Title VII should she be, required to assert a claim before she can prove all of its elements. *See When is Enough, Enough?* at 380.

Ms. Rivera's allegations, if credited, would be sufficient to find a continuing violation. In consequence, defendants' motion to dismiss several of them on the grounds that they are untimely is denied.[6]

---

6. The Court notes that the continuing violation doctrine must be asserted clearly in the EEOC filing and the district court complaint. *O'Malley v. GTE Service Corp.,* 758 F.2d 818, 821 (2d Cir.1985). The phrase "continuing violation" need not be used, however. *Grant v. Niagara Frontier Transp. Authority,* No. 86 CV 0874E(M), 1995 WL 319855 *4 (W.D.N.Y. May 23, 1995),

*Ms. Fernandez' Claims*

 Ms. Fernandez has alleged that Mr. Hernandez made sexual comments to her in 1993, made two advances which she refused, and thereafter became critical of her work and criticized her to Mr. Nunez. (Am Cpt ¶¶ 27–30) Although these allegations, if credited by a trier of fact, could amount to continuous pattern of harassment and retaliation by Mr. Hernandez, plaintiffs assert no facts from which one reasonably could find that Mr. Hernandez' 1993 conduct was chargeable to PRHAS. First, Mr. Hernandez did not have supervisory responsibility over Ms. Fernandez, unlike over Ms. Rivera. The rationale for attributing knowledge to PRHAS therefore is undermined. *Cf. Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 579 (10th Cir.1990) (defendant's position as captain is not a basis for attributing liability to employer where the defendant lacked supervisory authority over plaintiff and never exercised his authority to facilitate harassment) *cited in Karibian*, 14 F.3d at 780. Second, she concedes in the amended complaint that she said "nothing to anyone" about the comments or advances by Mr. Hernandez in 1993. (Cpt ¶ 28) Although she alleges that Mr. Hernandez criticized her to Mr. Nunez, she does not allege, and the allegations do not suggest, that Mr. Nunez knew why Mr. Hernandez was so critical. Third, plaintiffs' allegations do not indicate that the comments and advances of Mr. Hernandez in 1993 were open and notorious. Accordingly, the alleged misconduct of Mr. Hernandez in 1993 toward Ms. Fernandez is untimely under Title VII and not capable of resuscitation by the continuing violation doctrine.[7]

*Assault and Battery Claims*

Defendants move also to dismiss the assault and battery claims, arguing that plaintiffs have failed to allege facts that could support those theories and, in any event, that the claims are barred by the one year statute of limitations.

The amended complaint, which was filed on December 15, 1995,[8] added assault and battery as theories of recovery. (Am Cpt ¶¶ 43–44) The factual assertions underlying the assault and battery claims, however, were alleged in the original complaint, filed on October 5, 1995, and repeated in the amended complaint. In Ms. Rivera's case, the complaints alleged that in March of 1995, Mr. Hernandez on the last night of a conference "asked her dance and in the course of the dance held her improperly close." When she pulled away, he "threatened" that "she would have to suffer the consequences" if she did not come to work the next day. (Cpt ¶ 17; Am Cpt ¶ 17) As for Ms. Fernandez, the complaints alleged that on November 10, 1994, Mr. Nunez "put his arms around her and made clear that he sought sexual favors her"; when she reminded him that she did not want to be involved with office colleagues or superiors, he became "angry with her." (Cpt ¶ 30; Am Cpt ¶ 31)

 Defendants claim that assault and battery theories require allegations of a "grievous affront" and an "intent to injure" not contained in plaintiffs' complaints. This argument mischaracterizes the law and ignores the thrust of the plaintiffs' factual allegations. As the Second Circuit comprehensively has explained, under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." A battery is "an intentional

---

*aff'd as clarified on reconsideration*, 1996 WL 107116 (W.D.N.Y. Mar. 6, 1996); *Genas v. State of New York Dep. of Correctional Services*, No. 93 Civ. 1463 (GLG) 1994 WL 779752 *9 (S.D.N.Y. 1994), *rev'd in different part and appeal dismissed in part*, 75 F.3d 825 (2d Cir.1996).

**7.** This ruling, however, does not affect the timeliness of these allegations under the New York Human Rights Law claim asserted by plaintiff (am cpt ¶ 41), which has a three-year statute of limitations. *See Van Zant*, 80 F.3d at 714 (New York Human Rights Law claim has three year

statute of limitations pursuant to N.Y.Civ.Prac.L. & R. § 214(2)). Moreover, allegations that are time-barred under Title VII nonetheless might be relevant background to the timely Title VII allegations. *See Brown v. City of New York*, 869 F.Supp. 158, 169 (S.D.N.Y.1994) (collecting cases).

**8.** The amended complaint is dated November 30, 1995, but actually was filed on December 15, 1995. As will become clear, the difference in dates is immaterial to the result reached here.

wrongful physical contact with another person without consent." *United National Insurance Co. v. Waterfront New York Realty Corp.,* 994 F.2d 105, 108 (2d Cir.1993). The terms assault and battery do not in any way depend "on the degree of violence" because the law "totally prohibits the first and lowest stage, since every individual's person is sacred and no other has the right to touch it." *Id.* (internal quotation omitted).

 Contrary to defendants' suggestion, New York law does not make intent to cause physical injury an element of the torts of assault and battery. *Zgraggen v. Wilsey,* 200 A.D.2d 818, 819, 606 N.Y.S.2d 444, 445 (3d Dept.1994); *Villanueva v. Comparetto,* 180 A.D.2d 627, 628, 580 N.Y.S.2d 30, 32 (2d Dept.1992); *Trott v. Merit Dept. Store,* 106 A.D.2d 158, 160, 484 N.Y.S.2d 827, 829 (1st Dept.1985); 6 N.Y.JUR.2D, *Assault* § 4 at 198 (1980) (collecting cases) (hereinafter "6 N.Y.JUR.2D, *Assault* § 4"). Rather, the intent requisite to an assault under New York law is the intent either to inflict personal injury *or* to arouse apprehension of harmful or offensive bodily contact. *See, e.g., Trott,* 106 A.D.2d at 160, 484 N.Y.S.2d at 829; 6 N.Y.JUR.2D, *Assault* § 4 at 197, n. 24 (and cases cited therein). To prove battery, the required intent is merely that the defendant intentionally made bodily contact and that the intended contact was itself offensive or without consent. *See, e.g., Zgraggen,* 200 A.D.2d at 819, 606 N.Y.S.2d at 445; *Villanueva,* 180 A.D.2d at 628, 580 N.Y.S.2d at 32;

*accord,* 6 N.Y.JUR.2D, *Assault* § 4 at 198 n. 25.

 Here, the facts alleged in the amended complaint, the same as those in the original complaint, state claims for battery as defined under New York law. Each plaintiff clearly alleged that the individual defendants deliberately touched them and that the intended physical contact was offensive and unwelcome, thereby stating a claim for battery. *Cf. O'Reilly v. Executone of Albany, Inc.,* 121 A.D.2d 772, 503 N.Y.S.2d 185 (3d Dept.1986) (former employee's complaint alleging sexual harassment, including touching in a sexual manner, was sufficient to state cause of action for battery).

 Whether the allegations state a claim for assault is a closer question. There is no express allegation that either plaintiff was placed in apprehension of harmful or offensive bodily contact or of personal injury. However, Ms. Rivera alleges that she pulled away from Mr. Hernandez and was threatened with retaliation, while Ms. Fernandez alleges that she met with Mr. Nunez' anger after rejecting his embrace and advances. These circumstances conceivably could give rise to the apprehension necessary to an assault. Accordingly, the motion to dismiss for failure to state claim for assault is denied. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (dismissal for failure to state a claim appropriate only if plaintiffs can prove no set of facts which would entitle them to relief).[9]

9. Because plaintiffs have stated a claim for assault and battery, each an intentional tort, the exclusivity provision of the N.Y. WORKERS' COMPENSATION LAW §§ 10, 11 (McKinney 1992), does not preclude plaintiffs' claims. *See Chrzanowski v. Lichtman,* 884 F.Supp. 751, 756 (W.D.N.Y. 1995) ("It is equally clear that the exclusivity provision of the Workers' Compensation statute does not apply to intentional torts or wrongs"), *Lavin v. Goldberg Bldg. Material Corp.,* 274 APP.DIV. 690, 87 N.Y.S.2d 90, 93, *leave to appeal denied,* 275 APP.DIV. 865, 89 N.Y.S.2d 523 (3d Dept.1949) ("The Workmen's Compensation Law deals not with intentional wrongs but only with accidental injuries. We entertain not the slightest doubt that where an employer, either directly or through an agent or servant, is guilty of a felonious assault upon an employee[,] he cannot relegate the latter to the compensation statute as the sole remedy for his tortuous [*sic*] act."). While *Chrzanowski* and *Lavin* treat inten-

tional torts as an exception to the exclusivity doctrine in claims brought against individual employees and employers alike, some courts have held that *respondeat superior* liability is insufficient to hold an employer liable for the intentional tort by a co-worker; rather, a plaintiff must show that the employer ratified or had knowledge but failed to correct the wrong in order to satisfy the intentional tort exception to the exclusivity provision. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 220 n. 7 (2d Cir.1985); *Spoon v. American Agriculturalist, Inc.,* 120 A.D.2d 857, 860, 502 N.Y.S.2d 296, 299 (3d Dept.1986); *Thompson v. Maimonides Med. Ctr.,* 86 A.D.2d 867, 867–68, 447 N.Y.S.2d 308, 310 (2d Dept. 1982).

Assuming *arguendo* that the plaintiffs must show knowledge or ratification on the part of the employer, the Court finds that dismissal of the assault and battery claims as against PRHAS would

The next question is whether the assault and battery actions survive the one year statute of limitations imposed by N.Y. CPLR § 215(3). In Ms. Rivera's case, the alleged assault and battery occurred in March 1995—less than a year prior to the date that the amended complaint was filed—and obviously is not time barred. For Ms. Fernandez, the incident underlying the assault and battery charge allegedly occurred on November 10, 1994, more than a year before the filing date of the amended complaint, but less than a year before the date on which the original complaint was filed. It is significant, however, that the factual allegations underlying Ms. Fernandez' assault and battery claim (like those underlying Ms. Rivera's claim) were set forth in the original complaint. It is well settled under FED. R.CIV.P. 15(c) that an amended complaint asserting claims arising out of the same facts as those alleged in the original complaint relates back to the date of the original pleading even if the amendment seeks to add a new claim for relief and otherwise would be barred by a statute of limitations. *Tiller v. Atlantic Coast Line R.R. Co.*, 323 U.S. 574, 575, 65 S.Ct. 421, 422, 89 L.Ed. 465 (1945); *see also Villante v. Dept. of Corrections of the City of New York*, 786 F.2d 516, 520 (2d Cir.1986) (wrongful confinement claim relates back to original complaint alleging violation of Section 1983); *McDonald v. Thomas*, No. 89 Civ. 1959 (PKL), 1991 WL 60412 (S.D.N.Y. Apr. 8, 1991) (assault and battery claim, because it it arises out of the same nexus of facts as Section 1983 claims, relates back to date of initial pleading); *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 453 (S.D.N.Y.1985) (claims under Section 12(2) of Securities Act of 1933 which arose out of the same facts alleged in original complaint relate back to the date of original complaint). Accordingly, the assault and battery claims on behalf of Ms. Fernandez is timely because the amended complaint relates back to the date of filing the initial complaint, bringing

these claims within the one year limitations period.

### Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted only insofar as plaintiffs allege that Mr. Hernandez made sexual comments and advances to Ms. Fernandez in 1993 in violation of Title VII and otherwise is denied in all respects.

SO ORDERED.

---

be inappropriate at this stage as well. Both Ms. Rivera's alleged complaint circulated internally about the conduct of Mr. Hernandez and the high level, supervisory positions of the individual defendants may establish knowledge or ratification of the alleged conduct on the part of the employer.