Joseph TREGLIA, Plaintiff,

v.

TOWN OF MANLIUS, Defendant,

No. 99–CV–960.

United States District Court, N.D. New York.

Oct. 22, 1999.

Green & Seifter, P.C., Syracuse, NY (John L. Valentino, of counsel), for plaintiff.

Hiscock & Barclay, LLP, Syracuse, NY (Alan R. Peterman, of counsel), for defendant.

## MEMORANDUM–DECISION and ORDER

MUNSON, District Judge.

### BACKGROUND

In 1990, Plaintiff was employed as a Sergeant for the Village of Chittenango Police Department. In December of that year, plaintiff applied for and obtained a position as a road patrol officer with the Town of Manlius Police Department. On April 12, 1996, plaintiff had a new onset seizure disorder or epileptic seizure. His wife telephoned 999 for an ambulance, but before it came, two town of Manlius police officers arrived to assist the couple. En route to the hospital, plaintiff suffered a second seizure. He has not been subject to any further seizures since that time.

On April 16, 1996, plaintiff returned to work with his physician's note directed to the Manlius Police Department stating

that he could return to light duty, but could not drive or operate heavy equipment without further medical clearance.

Plaintiff asserts in his complaint that he received different treatment when he came back to work. Among other things, he was not permitted to take part in training classes until medical approval was received from his doctor, was assigned more administrative and less investigatory work, and received fewer occasions to work overtime. In the past, when he undertook an investigation and interview, he acted alone. If he was assigned this task now, he would be accompanied by a fellow officer. He further alleges that shortly after he returned to work, the Chief of Police ordered him to return home., and even though he provided the Manlius Police Department with ample medical documentation establishing that he was fit to return to unrestricted work, upon his eventual return, he was still treated differently.

In the spring of 1997, two other Manlius police officers were promoted to sergeant even though plaintiff had a higher score on the Civil Service examination for that position. Plaintiff claims that the Chief of Police then advised him that he would not be promoted to the rank of sergeant and suggested that he should retire from police work and enter another occupation. Plaintiff declined retirement, and a short time later he was assigned to the non-enforcement post of information systems officer.

Plaintiff felt the conduct he was receiving was discriminatory and brought it to the attention of the Police Benevolent Association. He also filed discrimination complaints with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("DHR") on April 14, 1997. Shortly after the filing, plaintiff was given an unsatisfactory performance evaluation. This evaluation was inconsistent with his 1995 and 1996 evaluations. In March, 1998, he was required to on work three different shifts when no other officer was required to do so. He was no longer used as a hostage negotiator, permanently assigned to office duties in 1998, and was passed over for promotion to sergeant in March, 1999.

Plaintiff was transferred to road patrol in October 1998, but in January 1999, he was assigned to the night shift. Plaintiff provided the Police Department with a note from his doctor recommending that he only work days. Plaintiff states that the Department balked at this recommendation, and plaintiff was compelled to go on disability. Plaintiff then filed second complaints with the EEOC and the DHR alleging that he had be discriminated and retaliated against by the defendant for filing the complaints of April 14, 1997. After six weeks on disability, plaintiff was returned to the day shift road patrol.

During March, 1999, plaintiff requested dismissal of his two complaints filed with the EEOC and the DHR in order to seek relief in federal court. The EEOC issued right to sue letters on March 23, 1999 and June 10, 1999. The complaint in this action was filed on June 18, 1999, within the 90 day limit for commencing an action under the terms of the respective right to sue letters.

This action is for employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; violation of the Rehabilitation Act of 1973, § 504; violation the Human Rights Law of the State of New York, ("HRL"), New York Executive Law § 296, et seq.(McKinney 1998); and for intentional infliction of emotional distress.

The relief sought by plaintiff includes, declaratory, injunctive and equitable relief; compensatory and general damages, attorney's fees, and the costs and disbursements incurred by plaintiff in bringing this lawsuit.

Currently before the court is defendant's motion for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has enter opposition to this motion.

## DISCUSSION

A dismissal under 12(b)(6) is a dismissal on the merits of the action, a determination that the facts alleged in the complaint fail to state a claim upon which relief may be granted. *Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc.*, 642 F.2d 31, 34 (2d Cir.) *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). In deciding a 12(b)(6) motion, the court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the nonmoving party." *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3rd Cir.1989). Dismissal of a claim is not proper unless it is obvious that the plaintiff is unable to prove no set of facts supporting his claim which would enable him to prevail. *Robb v. Philadelphia*, 733 F.2d 286, 290 (3rd Cir.1984). A complaint may be dismissed, however, when the facts pled and the reasonable inferences therefrom are legally insufficient to support the relief sought. *Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3rd Cir.1988). "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)(*quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)).

### The Discrimination Claim:

The ADA and the Rehabilitation Act prohibit discrimination by covered entities against qualified individuals with disabilities, and the standard used for interpreting pleading requirements is the same for both statutes. The ADA specifies that a covered employer shall not

discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms and conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The ADA defines the term "disability" to mean:

(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment.

█ For purposes of this motion, defendant does not dispute that it is subject to the ADA, however, defendant does argue that plaintiff is not "an individual with a disability" under the ADA. While plaintiff does have epilepsy, which is designated as a physical impairment under ADA requirements and makes him a qualified individual with a disability, he controls this impairment with medication and living restrictions and does not allege that his disability substantially limits a major life activity. (Plf.'s Mem. of Law p. 19). Therefore, in order to present a *prima facie* case, plaintiff must allege that his employer believed, however erroneous, that plaintiff suffered from an impairment that, if it truly existed, would be covered under the statutes and that the employer discriminated against him on that basis. ADA. § 3(2)(C), 42 U.S.C.A. § 12102(2)(C).

█ Defendant does not deny that it knew of plaintiff's medical impairment, but "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel University*, 94 F.3d 102, 109 (3rd Cir.1996). Plaintiff must show that defendant perceived his impairment as substantially limiting the exercise of a major life activity. Definitions of a major life activity includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing,speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Ryan v. Grae & Rybicki, P.C.* 135 F.3d 867, 870

(2nd Cir.1998). A major life activity, by its ordinary and natural meaning, directs the court to distinguish between life activities of greater or lesser significance. *Reeves v. Johnson Control World Services, Inc.*, 140 F.3d 140, 153 (2d Cir.1998), and the point to be resolved is "whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Colwell v. Suffolk County Police Dept.* 158 F.3d 635 (2d Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999).

■ Although plaintiff claims that the defendant sought to avoid involving him in several,major life activities, the ones he names are all included in the one major life activity of working. In *Sutton v. United Airlines, Inc.,* — U.S. ——, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court assumed without deciding that working constituted a major life activity. 119 S.Ct. at 2152. The Court further held that when a major life activity under consideration in an ADA case is that of working, the statutory phrase "substantially limits" requires, at minimum, that plaintiffs allege that they are unable to work in a broad class of jobs. ADA 3, 42 U.S.C.A. § 12102. *Id.* To be substantially limited in the major life activity of working, one must be precluded from more than one type of job, or particular job of choice, if jobs utilizing plaintiff's skills are available, or if a host of different jobs are available, one is not precluded from a broad range of jobs. 29 C.F.R § 1630.2(j)(3)(i, ii). *Id.* The fact that plaintiff was perceived as unable to fully perform all the functions of a police officer does not show that he was precluded from a broad class of jobs. "Being declared unsuitable for the particular position of police officer is not a substantial limitation on a major life activity." *Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989). "[A] employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a par-

ticular job." *Tudyman v. United Airlines,* 608 F.Supp. 739, 746 (C.D.Cal.1984).

In his own papers, plaintiff states that defendant provided defendant with a position in the police department. The fact that the duties of the position were not to his liking or did not permit the utilization of any of his unique talents does not mean that he is precluded from a substantial class of jobs. To be substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. *Murphy v. United Parcel Service, Inc.,* — U.S. ——, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999). Continuous assignment of a policeman to non-confrontational positions does not permit the inference that the officer was regarded as substantially limited in his ability to do work. To prove that he is regarded as substantially limited in his ability to work, the officer must show that the defendant perceived him to be incapable of working in a broad range of jobs suitable for a person of his age, experience and training. *Ryan v. Grae & Rybicki,* 135 F.3d 867, 872 (2d Cir.1998). Plaintiff has not done so. The fact that the officer was believed to be unable to wrestle with disturbers of the peace is not enough. *Ryan* at 872.

### The Retaliation Claim:

■ The ADA forbids retaliation against any person who has asserted rights under the ADA. Unlike a plaintiff in an ADA discrimination case, a plaintiff in a ADA retaliation case need not establish that he is a "qualified individual with a disability." By its own terms, the ADA protects "any individual" who has made a charge, testified, assisted, or participated in an investigation, proceeding concerning any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). A person still may pursue a retaliation claim under the ADA even if his underlying claim of disability fails. *Mesnick v. General Electric Co.,* 950 F.2d 816, 827 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The ADA incorporates the procedures and enforcement

mechanisms of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–3(a)(1964)., the basic statute prohibiting discrimination in employment. Given this similarity, it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a retaliation claim under the ADA. *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2nd Cir.1998).

To establish a prima facie case of retaliation under the ADA, a plaintiff must show by a preponderance of the evidence (1) participation in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 130 (2nd Cir.), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). A causal connection can be established indirectly by showing that a protected interest was closely followed in time by adverse action. *Davis v. State University of New York,* 802 F.2d 638, 643 (2nd Cir.1988). Here, plaintiff engaged in a protected activity by filing a discrimination charge with the EEOC shortly after the alleged adverse action began. A plaintiff does not have to show that the conduct he opposed was actually a violation of the statute as long as he can validate that he possesses " 'a good faith, reasonable belief that the underlying challenged actions of the employer violated that law.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2nd Cir.1998)(*quoting Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2nd Cir.1988)).

An adverse employment action sufficient to support a retaliation claim is a materially adverse change in the terms, privileges, duration and conditions of employment. *Torres v. Pisano,* 116 F.3d 625, 640 (2nd Cir.1997)(*quoting McKenney v. New York City Off–Track Betting Corp.,* 903 F.Supp. 619, 623 (S.D.N.Y.1995)); *Dortz v. City of New York,* 904 F.Supp. 127, 156 (S.D.N.Y. 1995).

"[A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A material adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in salary, a less distinguished title, a material loss of benefits, significantly diminished material benefits or other indices that might be unique to a particular situation." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998), *citing, Crady v. Liberty National Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

The court finds the plaintiff's allegations in the complaint regarding his retaliation claim are sufficient to preclude the granting of defendant's motion to dismiss this cause of action. Plaintiff's assertions suggest that his job duties were significantly changed and reduced to non-enforcement, administrative duties following the filing of his discrimination complaint. Additionally, that Sergeant Doyle advised him that he could not work on the police department computers because of "his suit against the department," that he received an unfair and inaccurate evaluation which indicated that his performance was unsatisfactory in specific areas involving judgment, decision making and flexibility which contributed to his not being promoted to sergeant, that he was removed as a hostage investigator, that he was subjected to several unnecessary investigations, was accused of inappropriate and disruptive conduct, removed from long term projects he had initiated, was not appointed to a position he sought with the department's emergency service team, was moved from the day shift to the less desirable night shift, and was forced on to disability leave and encouraged to apply for permanent disability. In view of the well established principle that the plaintiff's allegations must be taken as true

for the purposes of defendants' Rule 12(b)(6) motion, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), this portion of defendant's motion will be denied.

### The State Claims:

The language of the New York State Executive Law is sufficiently broad and its legislative history supportive of interpretation that nondisabled individuals whom an employer wrongly perceives as impaired are within the reach of the statute. McKinney's Executive Law § 290 *et seq.,* § 292(21)(c), § 296(1)(a). *Ashker v. International Business Machines Corporation,* 168 A.D.2d 724, 726, 563 N.Y.S.2d 572, 574 (1990). § 296(e)(1) of this statute prohibits retaliatory treatment of a person because "he or she opposed any practices forbidden under [the Human Rights Law]." *Bordell v. General Electric Company,* 208 A.D.2d 219, 222, 622 N.Y.S.2d 1001, 1002 (1995). Because New York courts apply the same analysis for perceived disability and retaliation claims as are applied in federal employment cases, plaintiff's state claims here were discussed previously in tandem with his federal claims. Suffice is to say that the court will retain jurisdiction over plaintiff's retaliation claim, and decline to do so over his perceived disability claim.

Neither the defendant's motion papers nor the plaintiff's opposition thereto have specifically addressed plaintiff's cause of action for intentional infliction of emotional distress, however, the court will do so.

Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) intent to cause, or reckless disregard of a substantial probability of causing severe emotional distress, (3) a casual connection between the conduct and the plaintiff's injury and (4) severe emotional distress. *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999)(*citing Howell v. New York Post;*

81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)). Conduct is "extreme and outrageous" so as to be actionable as a tort only if it goes beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society. *Id.* It is not enough that a defendant's intent was tortious, or even criminal, that its conduct was aimed at inflicting emotional distress or that such conduct was characterized by malice or a degree of aggravation that would support an award of punitive damages in connection with recovering damages for a different tort. *Id. Hagie v. General Motors Corporation,* 1999 WL 222607 at *2 (W.D.N.Y. April 6, 1999).

The defendant's alleged conduct does not exhibit the extreme, outrageous or atrocious conduct necessary to support a claim for intentional infliction of emotional distress, and the court will not exercise jurisdiction over this claim.

### CONCLUSION

Based upon the foregoing, that portion of defendant's motion seeking dismissal of plaintiff's federal and state perceived disability claims and state claim for intentional infliction of emotional distress is **GRANTED,** and the complaint is dismissed as to these claims; that portion of defendant's motion seeking dismissal of plaintiff's federal and state retaliation claims is **DENIED.**

**IT IS SO ORDERED.**