**AMWEST SURETY INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–2915.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1994.

Decided July 1, 1994.

H. Andrew Sonneborn (argued), Linder & Hollowell, Indianapolis, IN, Stanley Haren, Bush & Berger, Woodland Hills, CA, for plaintiff-appellant.

John J. Thar, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, Gary R. Allen, William S. Estabrook, Randolph L. Hutter (argued), Steven E. Cole, Department of Justice, Tax Div., Appellate Section, Washington, DC, for defendant-appellee.

Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

The plaintiff, Amwest Surety Insurance Company ("Amwest"), filed an action against the United States for wrongful tax levy pursuant to 26 U.S.C. § 7426(a)(1). The district court dismissed Amwest's complaint for lack of subject matter jurisdiction because Amwest had failed to bring its action within nine months from the date of the levy as required by 26 U.S.C. § 6532(c)(1). The district court also rejected Amwest's contention that certain letters it had sent to the revenue officer involved in this case constituted written requests for the return of property described in 26 U.S.C. § 6343(b), which would extend the limitations period an additional twelve months pursuant to 26 U.S.C. § 6532(c)(2). We affirm the district court.

## I.

The facts as alleged in Amwest's complaint demonstrate that Amwest, an insurance and surety company incorporated in California,

entered into an agency agreement with the taxpayer, Ms. Arvina Joyce Carlson, according to which Ms. Carlson would serve as Amwest's agent in Indiana for the purpose of issuing bail bonds. Pursuant to the agreement, Ms. Carlson set up a collateral trust fund account (the "indemnity fund") in her name at Peoples Bank in Indianapolis, Indiana. Ms. Carlson would fund the trust by depositing into the account a certain percentage (.0005%) of the face value of each bail bond issued by Amwest. The funds would be used to indemnify Amwest in the event of any losses or expenses resulting from the bail bonds written by Ms. Carlson. The agreement provided that the indemnity fund was subject to the sole control of Amwest.

Meanwhile, Ms. Carlson had been accruing a sizeable personal income tax liability with the IRS. Eventually, the IRS assessed Ms. Carlson for $330,167.04 in back taxes, covering the tax years of 1986 through 1989. In its efforts to collect the money owed, the IRS got wind of Ms. Carlson's account at Peoples Bank. On November 19, 1991, the IRS served Peoples Bank with notice of levy and seizure regarding the funds deposited at People's Bank in Ms. Carlson's name. In December of 1991, Peoples Bank, without notifying Amwest, complied with the IRS notice and remitted the funds (which amounted to $56,453.08) to the IRS.

When Amwest discovered that the IRS had seized the indemnity funds, it took steps to recover them. Amwest, through its in-house counsel, first secured a copy of the notice of levy that was sent to Peoples Bank. The "Notice of Levy," IRS Form 668–A, stated that "[i]f you have any questions about this levy, please call or write us." The only address given on the notice of levy under the heading "reply" was that of the Greenwood, Indiana office of the IRS, attention Wayne Stanton (the revenue officer in charge of the case). The notice also had attached to it an additional page entitled "Excerpts from the Internal Revenue Code." At the bottom of this page there is a heading entitled "Applicable Sections of the Internal Revenue Code." One of the sections listed is § 7426, "Civil Actions By Persons Other Than Tax-

payers." Turning to that section one gets to subsection (h) which provides: "Cross reference.—For period of limitations, see section 6532(c)." 26 U.S.C. § 7426(h). Section 6532(c) tells you that wrongful levy actions must be filed within nine months of the levy unless that period is extended by a timely submission of a request for the return of property described in 26 U.S.C. § 6343(b). But § 6343(b) sheds no light on the requirements for a request; it simply describes the types of property that may be returned. In other words, looking at the statutory provisions alone, one is left to guess just what constitutes a request for the return of wrongfully seized property. Indeed, it is only by going to the regulations under § 6532(c)(2) that one finally gets a hint at what constitutes such a request. 26 C.F.R. § 301.6532–3(b)(1) states that "[t]he 9 month period prescribed in section 6532(c)(1) ... shall be extended to the shorter of, ... 12 months from the date of filing by a third party of a *written* request under § 301.6343–1(b)(2) for the return of property wrongfully levied upon...." 26 C.F.R. § 301.6532–3(b)(1) (emphasis added). Coming to § 301.6343–1(b)(2), one at last discovers that requests for the return of property described in § 6343(b) are those which, besides containing certain specific information regarding the sought-after property, are written requests, "addressed to the district director (marked for the attention of the chief, special procedures staff) for the internal revenue district in which the levy was made." 26 C.F.R. § 301–6343–1(b)(2). But unfortunately for Amwest (as we shall soon see), there is no reference to these regulations in the notice sent by the IRS and received by Amwest.

So, on June 23, 1992, Amwest's attorney did what seemed the most logical thing to do given the information actually contained in the IRS's notice of levy: he wrote to Agent Stanton at the Greenwood office, informing him of Amwest's ownership interest and demanding return of the funds. In his letter, counsel explained that the seized funds comprised an indemnity fund set up pursuant to Amwest's agency agreement with Ms. Carlson. Counsel also included in his letter a copy of the agency agreement between Amwest and Ms. Carlson. In conclusion, the

letter stated that if Agent Stanton did not respond in two weeks, Amwest would file an action in federal court to recover its funds.

From the record before us, it appears that Agent Stanton did respond with a phone call on July 9, 1992. We say this because counsel for Amwest sent a second letter to Agent Stanton, dated July 10, 1992, in which counsel acknowledges a telephone conversation with Agent Stanton on July 9, 1992. Judging by Amwest's second letter, it appears that Agent Stanton had some questions regarding a $90,000 withdrawal from the indemnity fund shortly before the IRS levied the funds (perhaps Agent Stanton suspected that Ms. Carlson, knowing that the IRS was after her, was squirreling away funds). In his letter, counsel explained that Amwest made this withdrawal to reimburse it for losses it had incurred under the bonds issued by Ms. Carlson, and that this withdrawal was specifically authorized by the agency agreement between Amwest and Ms. Carlson. The letter further indicates that counsel was sending another copy of the agency agreement to Agent Stanton (he claimed he had not received it yet, even though it had been two and a half weeks since Amwest sent the first one). This second letter concluded by reminding Agent Stanton of Amwest's first letter of June 23, 1992, and again requested him to respond to Amwest's initial demand for the seized funds. The copy of this second letter in the record also includes a receipt for certified mail, which the Government does not dispute was signed by Agent Stanton. In fact, the Government does not dispute that Agent Stanton received both of Amwest's letters. Besides the telephone call and the two letters, the record contains no indication of any further contact between Amwest and Agent Stanton before the commencement of this case.

On November 12, 1992, Amwest filed its complaint in the district court against the United States for wrongful levy pursuant to 26 U.S.C. § 7426.[1] The government filed a motion to dismiss under Fed.R.Civ.P.

12(b)(1), arguing that the district court lacked subject matter jurisdiction over the complaint since Amwest had not filed its complaint within nine months of the levy as required by § 6532(c). Amwest later amended its complaint to allege that the correspondences with Agent Stanton regarding Amwest's ownership interest in the levied funds extended the period in which to file its claim. Amwest attached to its amended complaint copies of the two letters it had sent to Agent Stanton. Amwest argued that its letters to Agent Stanton constituted requests for the return of the levied property which, according to § 6532(c)(2), served to extend the nine-month period of limitations to twelve months from the date Amwest mailed its requests. In the alternative, Amwest argued that because it never received notice from Agent Stanton or the IRS that its letters did not strictly comply with the requirements of a written request under the regulations, its letters were deemed adequate pursuant to § 301.6343–1(b)(3) and, as such, served to extend the limitations period.

In response, the government argued that Amwest's letters were not in compliance with all of the regulatory provisions, specifically, 26 C.F.R. § 301.6343–1(b)(2), which required that a request for the return of property be addressed to the district director for the internal revenue district in which the levy was made, marked for the attention of the chief, special procedures staff. Consequently, Amwest's letters did not comply with the requirements of a "written request" within the meaning of the regulations for purposes of extending the nine-month limitations period. With respect to Amwest's alternate contention under § 301.6343–1(b)(3), the government maintained that the provisions of (b)(3) only apply to written requests that lack certain information and are thus inadequate. But such deficient requests must still be mailed to the appropriate party. Because the appropriate party (the district director) was not informed of Amwest's request, the

---

1. Amwest also included an action to quiet title pursuant to 28 U.S.C. § 2410. The district court dismissed this portion of Amwest's complaint, stating that as a third party with an ownership interest in the levied property, Amwest's exclusive remedy was an action for wrongful levy.

See Memorandum Opinion and Order at 2 (citing *Winebrenner v. United States*, 924 F.2d 851 (9th Cir.1991); *United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733 (5th Cir. 1980)). Amwest has not appealed this portion of the district court's judgment.

government claimed that it was under no duty to inform Amwest that its letters were inadequate. Therefore, according to the government, Amwest's letters could not extend the nine-month period of limitations.

On June 15, 1993, the district court granted the government's motion to dismiss for lack of jurisdiction. Amwest appeals from this judgment.

## II.

The jurisdictional question before us requires an examination and interpretation of the appropriate statutes and regulations. Therefore we review the district court's dismissal *de novo. See Raymond v. United States,* 983 F.2d 63, 64 (6th Cir.1993); *Winebrenner v. United States,* 924 F.2d 851, 855 (9th Cir.1991).

 The United States cannot be sued unless Congress has waived sovereign immunity with respect to the claim being asserted and the existence of such waiver is a prerequisite for jurisdiction in the district court. *See Kuznitsky v. United States,* 17 F.3d 1029, 1030 (7th Cir.1994); *accord Sims v. Heckler,* 725 F.2d 1143, 1145 (7th Cir.1984). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly construed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983) (citations omitted); *accord Kuznitsky,* 17 F.3d at 1030; *Sims,* 725 F.2d at 1145. "A statute of limitations requiring that a suit against the government be brought within a certain time period is one of those terms." *United States*

*v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990) (citations omitted). Accordingly, in an action against the government, the statute of limitations acts not only as an affirmative defense, but also as a restriction of the district court's subject matter jurisdiction over an action that is untimely filed. *See Williams v. United States,* 947 F.2d 37, 39 (2d Cir.1991).

Congress in § 7426(a)(1)[2] waived sovereign immunity for claims against the government for the return of property seized to satisfy the tax liabilities of another.[3] One of the conditions of that waiver is that the third party whose property has been seized must strictly comply with the time limitations set out in § 6532(c). *See* 26 U.S.C. § 7426(h). Section 6532(c)(1) requires that wrongful levy actions be filed within nine months from the date of the levy. An exception to this nine-month limitation is found in § 6532(c)(2). That subparagraph states that if a person seeks relief through administrative channels by filing a request with the Secretary for the return of property described in § 6343(b), the period for filing is extended to the shorter of twelve months from the date of such filing or six months from the date the Secretary mails a notice of disallowance. 26 U.S.C. § 6532(c)(2). It is not necessary for the party to first file an administrative claim—in other words, to exhaust his administrative remedies—before filing an action for wrongful levy in the district court. *See* 26 U.S.C. § 7426(f). But unless he does so, he has only nine months from the date of levy to initiate his claim.

It is undisputed that Amwest filed the present action beyond the nine-month period. The IRS served its notice of levy on Peoples Bank on November 19, 1991; Amwest filed

---

**2.** 26 U.S.C. § 7426(a)(1) states in full:

If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

**3.** Before the enactment of the Federal Tax Lien of 1966 (of which section 7426(a)(1) is part), the remedy for non-taxpayers who claimed an interest in levied property would be to sue the district director personally for the return of that property. *See* S.Rep. No. 1708, 89th Cong., 2d Sess., pt. II at 3750 (1966); *see also* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3580 at 275–76 (1984). Technically, these suits were not against the government, even though the government would defend the district director and pay the costs of his defense. *See* S.Rep. at 3750.

its complaint on November 12, 1992—three months too late. To overcome this obstacle, Amwest contends that its letters to Agent Stanton constituted the filing of a request for the return of its property within the meaning of § 6532(c)(2) and, as such, served to extend the nine-month period pursuant to that same subsection. Amwest filed its first letter to Agent Stanton on June 23, 1992. The government never mailed Amwest a notice of disallowance. Thus, Amwest argues, according to § 6532(c)(2), the period of limitations would be extended an additional twelve months to June 23, 1993.

In response, the government asserts that Amwest's letters to Agent Stanton did not constitute written requests for the return of property described in § 6343(b). As previously noted, the government relies on the regulations promulgated under that subsection which require that written requests "shall be addressed to the district director (marked for the attention of the chief, special procedures staff) for the internal revenue district in which the levy was made." 26 C.F.R. § 301.6343–1(b)(2). Since Amwest's letters were not addressed to the district director, but instead, were sent to Agent Stanton, the government contends that these letters did not qualify as requests for the return of property pursuant to § 6532(c)(2), and, consequently, cannot extend the nine-month limitations period under that subsection.

■ The parties' contentions raise an interesting preliminary question: whether an agency, by regulation, may impose additional conditions to the United States' consent to be sued? The decisions discussing the government's waiver of sovereign immunity typically speak in terms of *Congress*—by statute—setting out the terms and conditions of the government's consent to be sued. *See, e.g., Dalm,* 494 U.S. at 608, 110 S.Ct. at 1368 (courts should not extend a waiver of sovereign immunity "beyond that which *Congress* intended") (quotations omitted) (citations omitted) (emphasis added); *Block,* 461 U.S. at 287, 103 S.Ct. at 1820 (United States cannot be sued unless *Congress* consents); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (ex-

cept where *Congress* has consented, a court has no jurisdiction to entertain a suit against the United States); *Bank of Hemet v. United States,* 643 F.2d 661, 664 (9th Cir.1981). None of these cases, however, mentioned whether Congress, as the party with the authority to waive the government's immunity from suit, can delegate this authority to an agency. The government in our case offers a decision from the Federal Court of Appeals for the Ninth Circuit, *Winebrenner v. United States,* 924 F.2d 851 (9th Cir.1991), along with two decisions from the district courts, *Edwards v. United States,* 657 F.Supp. 36 (S.D.Ill.1986), and *Stuyvesant Ins. Co. v. Dept. of Treasury,* 378 F.Supp. 7 (S.D.N.Y. 1974), as support for the proposition that the requirements set out in § 301.6343–1(b) constitute additional conditions to the government's consent to be sued in an action for wrongful levy under § 7426(a)(1). But these decisions merely assumed, without offering any explanation, that the regulations under § 6343(b) are part of the conditions for bringing suit against the government for wrongful levy.

This court, in addressing whether regulations promulgated by the EEOC constituted additional conditions to the federal government's consent to be sued under Title VII, stated that for purposes of the waiver of sovereign immunity, "[v]alid administrative rules legislative in nature have 'the force and effect of law.'" *Sims,* 725 F.2d at 1146 (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 295, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979)). In order to have such effect the rule must: "(1) affect individual rights and obligations, (2) have been promulgated in compliance with statutory procedures under a delegation of legislative authority, (3) not be arbitrary and capricious, and (4) be reasonably related to the purposes of the enabling legislation." *Sims,* 725 F.2d at 1146 (citing *Production Tool v. Employment & Training Admin.,* 688 F.2d 1161, 1165–66 (7th Cir. 1982)).

Here the regulations promulgated under § 6343(b) meet the *Sims* test. There is no doubt that § 301.6343–1(b)(2), in setting out the requirements for a request for the return of wrongfully levied property, affects individ-

ual rights and obligations. In addition, the requirement that a § 6343(b) request be mailed to the district director was promulgated by the Secretary of the Treasury pursuant to Congress' explicit delegation of rule-making authority under 26 U.S.C. § 7805(a).[4] Furthermore, as noted by the district court, the logic behind the requirement is that it is the district director who has been given authority, by the Secretary, to resolve all administrative claims regarding wrongful levies. It only makes sense, then, that a request must be mailed to the district director in order to reliably start the administrative process for the return of property. Moreover, given the size of the IRS, it is possible that a request mailed to someone besides the district director will languish on some subordinate's desk (as here) and never find its way to the district director. Thus, the regulation is neither unreasonable nor arbitrary and capricious, and is reasonably related to the purposes of § 6343. Consequently, under the *Sims* analysis, the requirement that requests for the return of property be mailed specifically to the district director is "as binding on the courts as any statute enacted by Congress," *Sims*, 725 F.2d at 1146 (quotations omitted), and therefore constitutes an additional condition to the government's consent to be sued under § 7426(a)(1).

■ Returning to Amwest's claim, it is painfully apparent that the letters to Agent Stanton did not comply with the requirement of § 301.6343–1(b)(2). Agent Stanton is the revenue officer listed on the notice of levy sent to both Peoples Bank and Amwest. He is not the district director for the district in which the levy was made. Yet it would seem reasonable to the average person that any inquiries regarding the return of seized property should be sent to the revenue agent assigned to the case—especially when the notice of levy itself encourages the third

party to contact that agent. And when that agent, after acknowledging the complaint, does not bother to tell the third party that he would be better off looking at the relevant regulations and directing his inquiries to someone else, the less-informed would be easily lulled into letting the limitations period lapse. Nevertheless, the regulations required that such inquiries be sent to the district director. Harsh as it may seem, Amwest's letters were not sent to the proper party and consequently did not constitute a "written request for the return of property" pursuant to § 6532(c)(2).

■ Amwest, citing (b)(3) of the regulation, argues that the government had a duty to inform Amwest that it had mailed its written request to the wrong person. The relevant portion of that regulation provides:

(3) *Inadequate request.* Any request made prior to June 1, 1972, which apprises the Internal Revenue Service of the claimant's demand for the return of property wrongfully levied upon shall be considered adequate. A request made after May 31, 1972, shall not be considered adequate unless it is a *written request* containing the information required by subparagraph (b).[5] However, unless notification is mailed by the district director to the claimant within 30 days of receipt of the request to inform the claimant of the inadequacies, *any written request* shall be considered adequate.

26 C.F.R. § 301.6343–1(b)(3) (emphasis added). Amwest focuses on the phrase "any written request" and essentially argues that directing a request to the attention of the revenue officer involved in this case should be sufficient to constitute a "written request" under (b)(3) of the regulation. From this, Amwest takes the position that since the IRS never informed it within thirty days that its

---

4. 26 U.S.C. § 7805(a) states:
 (a) Authorization.—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

5. This information includes: (1) the name and address of the person submitting the request; (2) a detailed description of the property levied upon; (3) a description of the claimant's basis for claiming an interest in the property levied upon; (4) the name and address of the taxpayer, the originating internal revenue district, and the date of the lien of levy. 26 C.F.R. § 301.6343–1(b)(2).

letters should have been addressed to the district director and not to Agent Stanton, then, pursuant to this regulation, the letters were deemed adequate for the purposes of filing a § 6343(b) request.

To be sure, (b)(3) does not explicitly state that a "written request" must be one that was sent to the district director. But we cannot accept Amwest's contention that this phrase must be read in isolation from and not in conjunction with its appearance in subparagraph (b)(2) of the same regulation. As noted, all "written requests" for the administrative return of property under (b)(2) are to be addressed to the district director. This is because it is the district director who has been given authority by the Secretary of the Treasury to resolve these claims and, if necessary, to release any levies. To ensure that the district director does not sit on these claims forever, subparagraph (b)(3) comes in and requires the district director to flag the claimant to any inadequacies in its request within 30 days of its receipt; otherwise, the request will be deemed adequate. It only makes sense, then, that before the district director can notify the claimant of any inadequacies, it is first necessary that the district director actually received the request. As the district court put it: "[a] district director cannot notify the claimant about a 'request' the district director never received." Memorandum Order and Opinion at 9. Similarly, the fact that the district director's silence can amount to an acceptance of an otherwise inadequate request underscores the conclusion that the written request referred to in (b)(3) must have been sent to him in the first place. Were it otherwise—that is, if a "written request" under (b)(3) could be mailed to anyone other than the district director—it is possible that many written requests would not find their way to the district director until just before the expiration of the 30–day deadline. This "eleventh hour" procedure could only contribute to the district director making rushed and arbitrary decisions in determining the adequacy of requests for the return of property described in § 6343(b). We do not think that the Secretary, in adopting this regulation, intended such a result. We conclude therefore that, implicit in (b)(3)'s use of the phrase "written request,"

is the requirement that such a request be sent specifically to the district director.

█ Amwest raises the argument that, given the circumstances of this case, we should construe the regulation in a liberal manner and hold that a written request mailed to the revenue officer in charge of the case is sufficient to trigger the extension of § 6532(c)(2). But to do so would go against our previous statement that the terms and conditions of the government's waiver of sovereign immunity must be *strictly* construed. *See Block,* 461 U.S. at 287, 103 S.Ct. at 1819–20; *accord Sims,* 725 F.2d at 1145. Congress has waived the government's sovereign immunity with respect to wrongful levy actions brought by third parties. One of the conditions of that waiver is that the party must bring the action within nine months of the levy. The only exception to this nine-month period of limitations is where the owner of the wrongfully seized property decides to resolve his claim by filing a request for the return of property described in § 6343(b). In that case, the person filing his administrative claim gets an additional twelve months from the date of his request in which to file his claim, or six months from the mailing of the Secretary's disallowance of the claim, whichever is shorter. But to take advantage of this extension, it is imperative that the party file his written request in accordance with the applicable regulations, which, as we have already demonstrated, require that the request be sent to the district director, marked to the attention of the chief of the special procedures staff. Amwest did not do so, and consequently cannot claim that in not hearing from the IRS, it was entitled to assume that its letters were deemed adequate for purposes of § 301.6343–1(b)(3).

We recognize the harshness of this rule, especially under the facts in this case. It allows the IRS to receive actual notice—as it did here—and yet ignore the requests while possibly lulling the third-party into thinking that the period of limitations has somehow been tolled. If the record before us demonstrated that the proper person in the IRS had assumed control of Amwest's request we might have a different result. *See, e.g., Dependable Insur. Co., Inc. v. Internal Revenue*

*Serv. of Md.,* No. HM77–1758, 1978 WL 4570 at 2–3 (D.Md.1978) (noting that where a written request for the return of property was initially sent to wrong party but the record demonstrated that proper party (the district director) had assumed control of the matter, this was sufficient to put the IRS on notice of any inadequacies of the request; because the district director never responded within 30 days of the request the district court held that this rendered the request adequate for purposes of extending the nine-month period of limitations pursuant to § 6532(c)(2)). There is nothing in the record before us which indicates that the district director was ever notified of Amwest's request. Thus, we are left with Amwest's letters to Agent Stanton which, as demonstrated, did not qualify as written requests according to § 301.6343–1(b)(3). That being the case, Amwest is not entitled to the twelve-month extension of the period of limitations which means that its complaint for wrongful levy was filed three months too late.

### III.

Although the government wins, we certainly question the procedures followed in this case. We can think of no legitimate reason, nor did the government's attorney at oral argument provide us with one, why Agent Stanton would continue negotiating with Amwest without at least telling it that its request should be directed to the district director. Amwest had a legitimate claim for the return of its funds. Yet the IRS, through one of its agents, simply let this claim fall through a procedural crack. All this being said, the law is clear and Amwest's attorney unfortunately did not find his way through the maze of relevant rules and regulations. It is true that at the time it mailed its letter to Agent Stanton, Amwest still had three months before its complaint would be time-barred. And we assume that Agent Stanton, through negotiating with Amwest, was not trying to lull Amwest into not filing its complaint. Whatever the cause, Amwest missed the deadline, and, as a result, the district court did not have jurisdiction to entertain this action. The judgment of the district court is

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

In a context bearing some similarity to the one before us, Justice Holmes made his famous comment:

Men must turn square corners when they deal with the Government.

*Rock Island, A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).

The present case seems to require not only "square corners" but a whole course of close order drill. I suspect that even Justice Holmes would have been appalled at the apparent injustice inflicted on this taxpayer confronted by a regulatory maze. Nevertheless, I see no escape from the inexorable—if slightly apologetic—logic of the majority opinion. But as the majority points out, the Internal Revenue Service ought to be able to do a great deal better than its performance here indicates.