**Wade A. BLOOM and Cindy Bloom, Plaintiffs and Counterclaim Defendants,**

v.

**The UNITED STATES of America, Defendant and Counterclaim Plaintiff**

No. Civ.A.1:98–CV–429.

United States District Court, M.D. Pennsylvania.

July 1, 1999.

Gerald J. Williams, Williams & Cuker, Philadelphia, PA, for plaintiffs.

Lorna N. Graham, U.S. Attorney's Office, Scranton, PA, R. Scott Clarke, U.S. Department of Justice, Benjamin Franklin Station, Washington, DC, Mary Catherine Frye, U.S. Attorney's Office, Harrisburg, PA, for USA, defendant.

## MEMORANDUM AND ORDER

KANE, District Judge.

Before the Court is Defendant's motion for partial summary judgment. The motion has been fully briefed and is ripe for disposition. For the reasons set forth below, the motion is granted.

### I. *Background*

On March 16, 1998, Plaintiffs Wade and Cindy Bloom filed a complaint seeking damages pursuant to 26 U.S.C. §§ 7432 and 7433 for the alleged improper failure of the Internal Revenue Service ("IRS") to release two federal tax liens for federal employment and highway use taxes assessed by the IRS against Plaintiff Mr. Bloom in connection with his operation of Bloom Trucking Company. Plaintiffs' complaint also seeks damages for alleged wrongful collection of taxes. On May 22, 1998, the United States filed its answer. On June 10, 1998, the United States filed its Amended Answer and Counterclaim. The United States' counterclaim seeks recovery of an alleged erroneous refund of the sum of $67,547.11 paid by the IRS to the Blooms.

The basic facts underlying this case are not in dispute. In 1985, Wade Bloom formed Bloom Trucking Company ("Blooms Trucking") in Lewisberry, Penn-sylvania, purchased a truck, and began driving the truck for Roadway Package Systems ("RPS"). Sometime in 1988, the IRS conducted a tax examination of Mr. Bloom, and determined that he was liable for federal employment taxes for individuals who drove additional trucks which he (as a sole proprietor d/b/a Bloom Trucking Co.) owned and which were driven exclusively in the service of RPS. On November 6, 1989, the Internal Revenue Service filed with the Prothonotary for York County, Pennsylvania, a Notice of Federal Tax Lien for federal employment taxes (Form 941) and highway use taxes (Form 2290) with respect to Wade A. Bloom, Bloom's Trucking.

On April 4, 1990, Wade and Cindy Bloom filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Middle District of Pennsylvania. On July 7, 1994, the IRS filed with the Prothonotary for York County, Pennsylvania, a corrective Notice of Federal Tax Lien for the notice it had filed on November 6, 1989. The Blooms received a discharge in their bankruptcy case on February 28, 1995.

Sometime in late 1995 or early 1996, Revenue Officer Rocco Steco was assigned to collect certain employment and unemployment taxes that the IRS had assessed against Mr. Bloom d/b/a Blooms Trucking for periods in 1990, 1991, and 1992. On March 19, 1996, Mr. Steco caused to be filed with the Prothonotary for York County, Pennsylvania, a Notice of Federal Tax Lien for federal employment taxes (Form 941) for quarters in 1990, 1991, and 1992, and highway use taxes (Form 2290) in 1992 and 1994 with respect to Wade A. Bloom, Blooms Trucking.

On March 20, 1996, Mr. Bloom filed an Application for Taxpayer Assistance Order ("ATAO") with the Problem Resolution office of the IRS in which he requested that

no collection action be taken until his case could be reviewed. On April 12, 1996, Mr. Bloom wrote to the IRS requesting a "discharge" of a federal tax lien on his property in order to sell his house. On April 25, 1996, Patricia Crawley, an IRS Employment Tax Specialist, was assigned to handle Mr. Bloom's ATAO. On May 9, 1996, Mr. Bloom wrote to Revenue Officer Steco, requesting that the IRS release the November 6, 1989 lien and the March 19, 1996 lien from his property.

Sometime in May 1996, Ms. Crawley concluded that Mr. Bloom's employment taxes for 1990, 1991, and 1992 should be abated.[1] She notified Mr. Bloom of this conclusion by letter dated June 17, 1996. Two days later, on June 19, 1996, Revenue Officer Steco wrote to Mr. Bloom and informed him that abatements of the federal employment and unemployment taxes in 1990, 1991, and 1992 were pending on his accounts, and that the liens would be released after the abatements were completed. On July 1, 1996, Mr. Steco caused to be filed with the Prothonotary of York County, Pennsylvania, Certificates of Release of Federal Tax Lien for the November 6, 1989 lien, the July 7, 1994 corrective lien, and the March 16, 1996 lien.

Defendant argues that it is entitled to summary judgment on Plaintiffs' claims because (1) with respect to Plaintiffs' section 7432 claim, Plaintiffs have failed to exhaust administrative remedies, depriving this court of jurisdiction, and (2) with respect to Plaintiffs' section 7433 claim, Plaintiffs seek damages for an erroneous assessment of tax, although section 7433 provides a cause of action only for violation of the Internal Revenue Code in connection with the collection of tax.

## II. *Discussion*

### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element es-

---

1. Crawley's determination that Mr. Bloom was not liable for employment taxes for these years was based on her review of the IRS' settlement agreement with Roadway Package Systems. The IRS now contends that Crawley misread the agreement, and abated Mr. Bloom's taxes in error.

sential to that party's case and on which that party will bear the burden at trial." *Id.*

## B. *General Principles*

■ In light of the fact that sections 7432 and 7433 of the Internal Revenue Code constitute limited waivers of sovereign immunity, a brief overview of the doctrine is warranted. The United States, as sovereign, may not be sued without its consent. *See U.S. v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued. *See U.S. v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). In general, statutes waiving sovereign immunity should be strictly construed in favor of the United States. *See Gonsalves v. IRS,* 975 F.2d 13, 15 (1st Cir.1992).

■ Sections 7432 and 7433 of the Internal Revenue Code waive the sovereign immunity of the United States with regard to civil actions for damages where any officer or employee of the IRS knowingly or negligently fails to release a lien on the property of the taxpayer, *see* 26 U.S.C. § 7432(a), or recklessly or intentionally disregards any provision of the Internal Revenue Code in connection with any collection of federal tax with respect to a taxpayer. *See* 26 U.S.C. § 7433(a). Congress, however, attached conditions to sections 7432 and 7433, whereby sovereign immunity is not waived unless the aggrieved taxpayer first exhausts administrative remedies. *See* 26 U.S.C. §§ 7432(d)(1), 7433(d)(1). Accordingly, any failure to exhaust the administrative remedies mandated by sections 7432 and 7433 deprives this Court of jurisdiction. *See Venen v. U.S.,* 38 F.3d 100, 103 (3d Cir.1994).

## C. *Plaintiffs' Section 7432 Claim*

### 1. *Statutory and Regulatory Provisions*

Internal Revenue Code ("IRC") section 7432 states in pertinent part:

(a) In general—If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7432.

IRC section 6325 provides as follows:

"[s]ubject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which ... [t]he Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable; or ... [t]here is furnished to the Secretary or accepted by him a bond...."

26 U.S.C. § 6325.

The thirty day period within which the Service must release a lien is triggered by a finding or action by the Secretary. Stated differently, "it is the IRS, not the taxpayer, who must make the determination required by section 6325." *Husek v. IRS,* 778 F.Supp. 598, 605 (N.D.N.Y.1991).

In order to avoid any suggestion that the Service might attempt to avoid section 7432 liability by refusing or neglecting to "find" whether the taxpayer's liability has been paid or has become legally unenforceable, the regulations provide that under certain circumstances a "finding" will be deemed to have been made by the Service. Accordingly, Treasury Regulation § 301.7432–1(b) provides:

(b) *Finding of satisfaction or unenforceability.*

For purposes of this section, a finding under section 6325(a)(1) that the liability . . . has been fully satisfied or has become legally unenforceable is treated as made on the earlier of:

(1) [t]he date on which the district director of the district in which the taxpayer currently resides or the district in which the lien was filed finds full satisfaction or legal unenforceability; or

(2) [t]he date on which such district director receives a request for a certificate of release of lien in accordance with § 401.6325–1(f), together with any information which is reasonably necessary for the district director to conclude that the lien has been fully satisfied or is legally unenforceable.

26 C.F.R. § 301.7432–1(b).

Accordingly, a section 6325 finding can be based on either (1) an actual finding of full satisfaction or legal unenforceability, or (2) a request for a certificate of release of lien in accordance with § 401.6325–1(f), accompanied by any information which is reasonably necessary for the district director to conclude that the lien has been fully satisfied or is legally unenforceable.

Temp. Treas. Reg. § 401.6325–1(f) provides:

(f) *Taxpayer requests.* A request for a certificate of release with respect to a notice of Federal tax lien shall be submitted in writing to the district director (marked for the attention of the Chief, Special Procedures Function) of the district in which the notice of Federal tax lien was filed. The request shall contain the following -

(1) Name and address of the taxpayer;

(2) A copy of the notice of Federal tax lien affecting the property; and

(3) The grounds upon which the issuance of a release is sought.

Section 7432(d) requires a plaintiff to exhaust administrative remedies before filing a civil suit for damages. *See* 26 U.S.C. § 7432(d)(1). As noted above, the failure to exhaust administrative remedies deprives the Court of jurisdiction. *See Venen,* 38 F.3d at 103.

The administrative remedies for section 7432 are set forth in Treasury Regulation § 301.7432–1. An administrative claim for failure to release a tax lien must be sent in writing to the district director (marked for the attention of the Chief, Special Procedures Function), and must include the taxpayer's identifying information (including phone numbers, addresses and time to be contacted), a copy of the lien affecting the property, a copy of the request for release of lien made in accordance with § 401.6325–1(f), if applicable, the grounds for the claim (including substantiation), a description of the injuries incurred, and the dollar amount of the claim. *See* Treas. Reg. § 301.7432–1(f); *Venen,* 38 F.3d at 103.

*2. Analysis*

Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' section 7432 claim because Plaintiffs failed to exhaust administrative remedies under section 7432(d) by failing to make a proper request for a certificate of release of lien, and therefore, this Court lacks jurisdiction over Plaintiffs' section 7432 claim. Plaintiffs make two arguments in response: first, they maintain that they exhausted their administrative remedies by making a proper request for a certificate of release of lien; second, they argue that, in any event, they were not required to make such a request because the Service made a "finding" of satisfaction or unenforceability at the time it "knew or should have known" that the Blooms' tax liability was unenforceable.

a. *Failure to Exhaust Administrative Remedies*

With regard to a request for a certificate of release of lien, the statutory and regulatory scheme described above requires that the taxpayer first make a request under section 6325 that the tax lien be released, and if the lien is not released in a timely manner, file an administrative claim for damages. A failure to correctly petition the IRS for relief constitutes a failure to exhaust administrative remedies. *See Venen,* 38 F.3d at 103; *Amwest Surety Ins. Co. v. U.S.,* 28 F.3d 690, 696 (7th Cir.1994).

The Court finds that, as a matter of law, Mr. Bloom failed to exhaust administrative remedies. This is so because he did not submit an administrative claim for damages which complied with the applicable regulations. Specifically, he never properly requested a certificate of release of lien(s), and consequently, did not attach a proper request to his administrative claim for damages. By letter dated April 12, 1996, Mr. Bloom requested that the IRS "discharge" a federal tax lien on his real property so that he could sell it. This letter constituted a request for a certificate of discharge under section 6325(b), not a request for a certificate of release of lien under section 6325(a), since Mr. Bloom was seeking merely to discharge from the lien a specific parcel of real property so he could sell it. *See* Bloom dep., Ex. D–1.

A lien release under section 6325(a) is legally distinguishable from a discharge of specific property subject to a lien under section 6325(b). When the IRS issues a certificate of release pursuant to section 6325(a), it fully relinquishes its lien priority and interest in *all* property of the taxpayer. In contrast, under Section 6325(b), the Secretary issues a certificate of discharge for only a part of the taxpayer's property subject to the lien. *See* 26 U.S.C. § 6325(b); Treas. Reg. § 301.6325–1(b). When the IRS files a certificate of discharge, the lien remains against all other property not specifically identified in the certificate. Accordingly, Mr. Bloom's April 12, 1996 letter did not constitute a request for a certificate of release with respect to a notice of federal tax lien, but was merely a request for a certificate of discharge.

Even if Plaintiffs' April 12, 1996 letter fairly could be construed as a request for a certificate of release of a lien rather than a request for a discharge of specific property subject to the lien, the letter nevertheless would not constitute a valid section 6325(a) request as it fails to comply with the requirements for such a request set forth in Treasury Regulation § 401.6325–1(f). There is no evidence that Plaintiffs attached a copy of the notice of Federal tax lien affecting the property to the letter; further, the letter fails to set forth the grounds upon which the release is sought, beyond stating that "I am asking for discharge of a federal tax lien on my property do [sic] to the sale of the property;" and finally, the letter is not addressed to the district director (nor marked for the attention of the Chief, Special Procedures Function). *See* 26 C.F.R. § 401.6325–1(f).

On May 9, 1996, Mr. Bloom wrote a letter to Revenue Officer Steco in which he used the phrase "release of lien information." However, that letter similarly did not constitute a request for a certificate of lien release, because it did not comply with the requirements for such a request set forth in Treasury Regulation § 401.6325–1(f). The letter did not state the grounds for release of the liens, and further, Mr. Bloom failed to send the letter to the district director. *See* 26 C.F.R. § 401.6325–1(f); *Amwest,* 28 F.3d at 696 (a letter addressed to a revenue officer does not comply with the regulations requiring a written request to be sent to the district director). And, although Mr. Bloom stated that he was enclosing with his May 9

letter "the release of lien information ... [that he] originally had filed through the district office," this clearly was a reference to his April 12, 1996 request for a discharge of lien from his real property.

On February 19, 1998, Mr. Bloom filed an administrative claim for damages pursuant to Treasury Regulation § 301.7432–1. The Treasury Regulation specifically requires a claimant to include a copy of the request for the certificate of release of lien which the claimant filed in accordance with § 401.6325–1(f), if applicable. *See* 26 C.F.R. § 301.7432–1(f)(2)(iii). The administrative claim for damages which Mr. Bloom submitted failed to comply with the regulation because it did not include (as Mr. Bloom never had properly submitted) a copy of a request for certificate of release filed in accordance with Treasury Regulation § 401.6325–1(f).

Since Mr. Bloom failed to file a proper request for a certificate of release and a proper administrative claim for damages, he failed to exhaust his administrative remedies, and therefore, this Court lacks jurisdiction over Plaintiffs' section 7432 claim, if that claim is based on a section 6325 "finding" stemming from the receipt of a proper request for a certificate of release of lien. *See Venen*, 38 F.3d at 103 (failure to correctly petition Internal Revenue Service for relief is failure to exhaust administrative remedies); *Amwest*, 28 F.3d at 696 (same); *Veglia v. U.S.*, 1996 WL 392159,*3 (N.D.Ill. July 11, 1996) (failure to strictly comply with guidelines for filing an administrative claim constitutes failure to exhaust administrative remedies).

### b. *"Knew or Should Have Known"*

The Court next turns to Plaintiffs' argument that, even if Plaintiffs' submissions to the IRS failed to comply with the statutory and regulatory mandates, Plaintiffs were not obligated to request a certificate of release in order to trigger potential section 7432 liability. As noted above, section 6235 expressly requires a "finding" of satisfaction or unenforceability of taxes underlying a lien before the IRS is obligated to release a lien. Also, as noted above, the applicable treasury regulation specifically provides that such a finding is made on the earlier of: (1) the date on which the district director finds full satisfaction or unenforceability of the lien(s) or (2) the date on which the district director receives a "request for a certificate of release" which complies with Treasury Regulation § 401.6325–1(f), together with any information which is reasonably necessary for the district director to conclude that the lien has been fully satisfied or is legally unenforceable. *See* 26 C.F.R. § 301.7432–1(b).

Plaintiffs argue that even if they failed to comply with the requirements that accompany a request for a certificate of release, they were not required to submit such a request because the district director made an actual "finding" of satisfaction or unenforceability whenever it "knew or should have known" that the taxes for which the lien was filed were unenforceable or satisfied. Plaintiffs maintain that summary judgment should not be granted against them because the "knew or should have known" standard applies to determine the trigger for section 7432 liability, and under that standard, there is at least a genuine issue of material fact as to when the IRS "knew or should have known" that the Blooms' liens were fully satisfied or unenforceable.

In support of their argument, Plaintiffs cite without discussion *Steffen v. U.S.*, 952 F.Supp. 779, 783 (M.D.Fla.1997); *Miller v. U.S.*, 813 F.Supp. 715, 724 (N.D.Cal.1992); and *Griswold v. U.S.*, 59 F.3d 1571, 1575 (11th Cir.1995). However, these cases do not stand for the proposition espoused by Plaintiffs, namely, that the conditions of section 6325 are met whenever the IRS

"should have known" that the taxes underlying a lien were satisfied or legally unenforceable.

As an initial matter, neither sections 7432 or 6325 nor the applicable regulations contain any reference to a "knew or should have known" standard governing when the IRS must release a lien. To the contrary, before the thirty-day period in which to release a lien is triggered and the IRS potentially becomes liable for damages under section 7432, section 6325 and the applicable regulations unambiguously require a "finding" of satisfaction or unenforceability by the district director, or a request for a certificate of release. Even then, a taxpayer still must demonstrate a knowing or negligent failure to release in order to prove a section 7432 claim.

The court in *Steffen v. U.S.* addressed the specific question of whether an IRS employee who failed to release a lien "knew or should have known" that the requirement of section 6325 had been satisfied. The Court stated that a taxpayer may demonstrate a section 6325 finding through direct or circumstantial evidence of either: (1) an actual "finding," or (2) an obligation to make such a finding (the constructive knowledge approach) based on information contained in the taxpayer's "request for certificate of release." *Steffen,* 952 F.Supp. at 783. Accordingly, *Steffen* stands for the proposition that before a section 7432 claim arises for a knowing or negligent failure to release a lien after the section 6325 conditions are met, the taxpayer first must demonstrate that such conditions were in fact met by showing an "actual finding" or a constructive finding based on sufficient information in the taxpayer's request for certificate of release.

In making their argument with regard to the alleged "knew or should have known" standard, Plaintiffs attempt to incorporate the mental state required for a section 7432 violation—"knowing or negli-gent failure to release a lien" into the section 6325 finding that provides the basis for a section 7432 claim. That requirement simply does not exist in section 6325—according to the applicable regulations, a section 6325 finding can only be shown by (1) an actual finding with regard to the enforceability of tax liability, or (2) a request for a certificate of release containing information sufficient to justify release of the lien.

■ In sum, in determining whether a taxpayer has a section 7432 cause of action for a knowing or negligent failure to release a lien when the conditions of section 6325 have been met, the threshold issue is not whether the IRS knew or should have known that the taxes underlying the lien were satisfied or legally unenforceable, but rather, the issue is whether the IRS (or, better stated, the proper IRS employee) knew or should have known that the requirements of section 6325 had been met—that there was an actual "finding" by the district director, or a constructive finding based on the contents of a request for certificate of release.

■ Accordingly, in this case, the Blooms incorrectly assert that the relevant inquiry is whether the IRS "knew or should have known" that the lien for pre–1990 taxes had been satisfied by the time of the bankruptcy discharge, and the lien for pre–1994 taxes was unenforceable because of a settlement agreement in tax litigation between RPS and the United States. In accordance with the Internal Revenue Code and the regulations, the proper inquiry is whether plaintiffs can demonstrate (by direct or circumstantial evidence) either an actual "finding" by the IRS, or a constructive "finding" based on information contained in a properly filed request for certificate of release. The Blooms cannot demonstrate a constructive finding with respect to either tax lien be-

cause, as discussed above in section C.2.a, they did not submit a proper request for a certificate of release. Moreover, the Plaintiffs have presented no evidence which shows that the IRS (through the appropriate district director) made an actual "finding" regarding satisfaction or unenforceability of the Blooms' tax liabilities until the June 17, 1996 letter from Patricia Crawley to Mr. Bloom, informing him that the taxes would be abated. Although Ms. Crawley verbally informed Mr. Bloom that the IRS would be abating his tax liability in late May 1996, it was not until June 17, 1996 that a letter issued from the district director's office formally advising Mr. Bloom of the determination that had been made with regard to his tax liability. Accordingly, the June 17, 1996 letter constitutes the "finding" of satisfaction or unenforceability for purposes of section 6325. As the liens were released on July 1, 1996, fewer than 30 days after the June 17, 1996 finding, Plaintiffs have no claim for damages under section 7432. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiffs' Section 7432 claim.

### D. *Plaintiffs' Section 7433 Claim*

Section 7433 of Title 26 provides as follows:

> (a) In general—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. § 7433.

Section 7433, like section 7432, is a limited waiver of the United States' sovereign immunity. Accordingly, it " 'must be strictly observed, . . . and construed in favor of the sovereign.' " *Gonsalves v. IRS,* 975 F.2d 13, 15 (1st Cir.1992).

Section 7433 provides a civil remedy for reckless or intentional violations of the Internal Revenue Code which occur "in connection with any collection of Federal tax with respect to a taxpayer." 26 U.S.C. § 7433. Courts are split on the meaning of the phrase "in connection with any collection of Federal tax," specifically, whether it encompasses a cause of action for lawful collection procedures undertaken in connection with an erroneous tax assessment. The majority of cases that have addressed this issue have found that section 7433 does not provide a cause of action for lawful collection procedures taken in connection with an erroneous tax assessment. *See Miller v. U.S.,* 66 F.3d 220, 222–23 (9th Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 471 (1996) (section 7433 does not extend to the erroneous or improper assessment of taxes); *Shaw v. U.S.,* 20 F.3d 182, 184 (5th Cir.1994), *cert. denied,* 513 U.S. 1041, 115 S.Ct. 635, 130 L.Ed.2d 540 (1994) (based on plain language of section 7433, a taxpayer cannot maintain an action under this statute for the improper assessment of taxes); *Gonsalves v. IRS,* 975 F.2d 13, 16 (1st Cir. 1992) (taxpayer cannot circumvent refund action process by litigating merits of tax assessment in section 7433 damage claim); *Culpepper–Smith v. U.S.,* 1998 WL 544964,\*9 (E.D.Pa. Aug. 24, 1998) (section 7433 applies only to the reckless or intentional disregard of the tax laws in the collection of taxes, not to the improper assessment of taxes); *Hart v. U.S.,* 1997

WL 732466,*1 (E.D.Pa. Nov. 21, 1997) (taxpayer may not sue IRS under section 7433 because of the invalidity of an underlying assessment); *Arnett v. U.S.*, 889 F.Supp. 1424, 1431 (D.Kan.1995) (same).

A smaller class of cases, relied on by Plaintiffs here, have held that section 7433 extends to a cause of action based on lawful collection procedures taken in connection with an erroneous tax assessment. *See Crowd Mgmt. Services, Inc. v. U.S.*, 792 F.Supp. 87, 92 (D.Or.1992), *aff'd,* 1994 WL 481183 (9th Cir. Sept. 6, 1994) (unpublished); *Miklautsch v. Gibbs,* 1990 WL 236045, *6 (D.Alaska 1990).

■ The cases finding that no section 7433 cause of action exists for lawful collection actions taken in connection with an erroneous tax assessment rely on the legislative history of section 7433. Specifically, the cases recognize that while an earlier version of section 7433 granted taxpayers the right to sue the Federal government "for damages if in connection with the determination or collection of any Federal tax," the portion of the law allowing for damages arising from the determination of a federal tax was specifically deleted in the final version. *See* H.R.Conf.Rep. No. 100–1104, 100th Cong., 2d Sess. 228–229 (1988), reprinted in 1988 U.S.C.C.A.N. 4515, 5288–5289 ("An action under this provision may not be brought under this provision based on alleged reckless or intentional disregard in connection with the determination of tax."). Based on this legislative history, the Court is persuaded by the weight of authority and holds that section 7433 does not extend to claims based on lawful collection procedures undertaken in connection with an erroneous tax assessment.

■ Accordingly, in order to succeed on a claim under section 7433(a), a taxpayer must prove, by a preponderance of the evidence, that the IRS did not follow the "prescribed methods of acquiring assets." *See Shaw v. U.S.*, 20 F.3d at 184; *see also*

*Miller v. U.S.*, 66 F.3d at 222. In other words, a section 7433 plaintiff must demonstrate that some IRS official or employee intentionally or recklessly violated a specific section of the Internal Revenue Code or Treasury Regulations in collecting the taxes from the taxpayer. *See* 26 U.S.C. § 7433(a) *White v. Commissioner,* 899 F.Supp. 767, 772 (D.Mass.1995).

In this case, Plaintiffs' allegations regarding the IRS' collection of taxes are set forth in paragraphs 11–13 and 15–23 of Plaintiffs' complaint. In those paragraphs, Plaintiffs take issue with the IRS' collection of taxes that were erroneously assessed. Plaintiffs' allegations are summarized in paragraph 23, which states: "[i]n filing the lien, and taking other collection action, despite the unenforceable nature of the underlying assessment, the Lancaster office of the IRS recklessly or intentionally disregarded provisions of the Internal Revenue Code and regulations promulgated thereunder...." Complaint, ¶ 23.

In other words, Plaintiffs claim that the IRS engaged in wrongful collection activity because its collection actions were based on an erroneous assessment of taxes against Mr. Bloom, not because the IRS intentionally or recklessly violated any Code provisions when it engaged in collection procedures with regard to the Blooms' tax liability. As discussed above, the Court finds that such an allegation does not support a section 7433 claim. *See Miller,* 66 F.3d at 222–23; *Shaw,* 20 F.3d at 184; *Gonsalves,* 975 F.2d at 16. Taxpayers who wish to challenge the IRS' calculation of their tax liability must file either a petition for redetermination in the Tax Court under 26 U.S.C. §§ 6213, 6214, or a refund action in a district court. *See* 26 U.S.C. § 7422. Section 7433 was not intended to supplement or supersede, or to allow taxpayers to circumvent, these procedures. *See Gonsalves,* 975 F.2d at 16.

Plaintiffs contend that their complaint extends beyond assessment to issuance of liens and demands for payment.[2] However, filing liens and making demands for payment of assessed taxes are statutorily prescribed methods for collecting taxes, not a violation of the Code. *See* 26 U.S.C. §§ 6321, 6323(f). Plaintiffs also cite Revenue Officer Steco's alleged statement that he would begin to seize their assets within thirty days as constituting an improper collection procedure. Assuming that Revenue Officer Steco made that statement, Plaintiffs fail to point to a Code provision which prohibits such a statement. It is the duty of the IRS to collect taxes and to investigate possible defalcations of taxpayers in reporting and paying taxes. *See Chamberlain v. Kurtz,* 589 F.2d 827, 835. (5th Cir.1979). Accordingly, as the allegations in Plaintiffs' complaint amount to an attack on lawful collection procedures undertaken pursuant to an erroneous assessment of tax, Plaintiffs' allegations do not state a claim for relief under section 7433.

### III. *Order*

Accordingly, for the reasons stated in this memorandum, IT IS ORDERED THAT Defendant's motion for partial summary judgment is GRANTED. IT IS FURTHER ORDERED THAT the Clerk of Court is directed to enter judgment in Defendant's favor as to both counts of Plaintiff's complaint.

---

**2.** Plaintiffs also cite assessment of penalties and completion of returns for plaintiff. These are clearly assessment procedures, not collection procedures.